# Dunn & Lallande Brothers *v.* Gunn.

*Action for Damages for Personal Injury Received by Falling Into an Open Ditch.*

(Decided Dec. 21st, 1906.   42 So. Rep. 686.)

1. *Highways; Definition; Public Highways.*—A public highway is one established in a regular statutory proceeding, or one used by the public for twenty years or more, or one under the control of the public dedicated by the owner; and every public thoroughfare is a highway.

2. *Same; Regulation; Obstruction; Notice.*—The owner of land who permits the use of a road over it cannot place obstructions dangerous to travel in the same without giving notice to those using it, nor can he license a third person to do so.

3. *Same; Actions; Pleadings; General Issue; Special Defense.*—It was not error to sustain a demurrer to a plea denying the

[Dunn & Lallande Brothers v. Gunn.]

existence of a public or neighborhood road as alleged in the complaint, where the general issue had been interposed also.

4. *Same; Knowledge of Defendant.*—A plea asserting that the road referred to in the complaint was so indistinct that it did not appear to ordinary observation to be a road used by the public, is demurrable in not alleging that the defendants did not know that it was used by the public.

5. *Same.*—A plea stating that the place where plaintiff was injured was not in a town as specifically alleged in the complaint, states a defense available under the general issue; and the further allegation therein that it was not reasonably obvious to defendants that such ditch would be dangerous, but failing to state that it was not dangerous, or that defendant did not know it was dangerous, does not state a defense to the action.

6. *Same; Use of Road; Revocation of Right; Notice.*—The fact of the revocation of the right to use a road, without notice of such to persons accustomed to use it, is no defense to an action for injuries by obstructions placed thereon.

7. *Damages; Personal Injuries; Evidence Amount of Damages.*—It was permissible to show that plaintiff, who was a physician could not care for his practice as conveniently and agreeably, and what was the average amount of his practice per month, before the injury, as an element of damage.

8. *Same; Admissibility on the Pleadings.*—The complaint not alleging damages because of losss of business, it was incompetent to show the decrease in the physician's practice, and the impairment of his ability to practice.

9. *Evidence; Opinions; Injuries; Ability to Practice Medicine.*—It was incompetent for the physician to testify as to his opinion as to what per cent his ability to practice his profession had been decreased by his injuries.

10. *Same; Hearsay; Notice to Partner.*—It is hearsay or opinion evidence for a partner to state that his partner, or the firm, had never been notified of a certain fact, and inadmissible.

11. *Highways; Obstructions; Owner of Property; Authority to Obstruct.*—The fact that the owner of the property had authorized defendant to cut a ditch across a road over said property used by the public would not authorize the cutting of said ditch in such a manner as to endanger a traveller along the road in the night.

12. *Principal and Agent; Authority of Agent; Superintendent.*—One who is superintendent only of the lime works of his employer, has no authority by virtue of such agency to authorize the cutting of a ditch across the road over his employer's property.

[Dunn & Lallande Brothers v. Gunn.]

APPEAL from Shelby Circuit Court.

Heard before Hon. A. H. ALSTON.

Action by J. H. Gunn against Dunn & Lallande Bros. Judgment for plaintiff, and defendants appeal. Reversed.

The nature of the suit and the substance of the compaint is sufficiently set out in the opinion. The second count simply alleges that the excavation was made across a road or way which was generally used and traveled by the public in going to and returning from the town or village of Longview, and that it was a much traveled roadway was obvious and apparent. The third count describes the roadway as a public highway.

Demurrers were interposed to these complaints as follows: "Said complaint shows no facts entitling plaintiff to maintain the suit. No facts are shown imposing any duty on these defendants to plaintiff in reference to the matter complained of. No facts are alleged from which any duty to plaintiff on the part of these defendants arose. There was no averment that the road was a public road. For aught that appears, the plaintiff was a trespasser in the use he was making of the alleged road. For aught that appears, the excavation alleged was only a legitimate use of land by the owner or by his authority. For aught that appears, plaintiff was guilty of negligence which contributed to his injury, in that in the nighttime he undertook to go across private land, where he had no right to be, in a buggy or vehicle, without ascertaining whether he could safely so do. It appears that the excavation alleged was not such as would likely or probably cause injury to one passing along the alleged roadway. It does not appear that the excavation or surroundings were such as would suggest danger, or as required or suggested 'precaution to prevent pedestrians or people driving or on horseback from falling into the same." Said count shows that the excavation alleged was not the proximate cause of plaintiff's injury. It appears that the proximate cause of plaintiff's injury was the kick of a horse. It does not appear that the negligence of these defendants was the proximate cause of the injury complained of. It appears that the injuries sustained were the re-

sult of falling out or partially out of the buggy or vehicle, which it was alleged was caused by the excavation and the action of plaintiff's horse in kicking him. It appears that plaintiff drove or was carried into the excavation of 12 to 15 inches with great force and violence, and that his injuries were caused by the great force and violence with which he was driving, or with which his horse was carrying him. It appears that plaintiff was driving in a careless and negligent manner. It does not appear that defendant had notice of any defect that would render the excavation dangerous or likely to produce harm. It does not appear that the excavation was per se dangerous, or that defendant had notice of facts that would probably render it so. It does not appear that the excavation was such as would have suggested danger, or would have been dangerous to an ordinarily prudent person driving in a prudent manner. It does not appear that the plaintiff or the public had any right, by license, prescription, or consent of owner, or otherwise, to travel where plaintiff was traveling, nor any reason why the owner of the land or these defendants owed plaintiff any duty relative thereto." The above demurrers were filed to the second and third counts, with the following additional demurrers to the second count: "It appears that the excavation was made in the repairing or construction of a railroad bed, and it does not appear but that said excavation was on the right of way of the railroad company for whom such excavation was made. It appears that the excavation was on a railroad right of way, and that plaintiff was a trespasser."

After demurrers were overruled, the defendant filed a number of pleas, to some of which demurrers were sustained, which pleas are as follows: Plea 2: "That there was no neighborhood road, or public highway, leading from Longview Station to said Calera and Pelham public road." Plea 5: "That said alleged road, if any, in said complaint mentioned, was so dim and indistinct that it did not appear to ordinary observation to be a road used by the public." Plea 8: "That the place where plaintiff is alleged to have been injured was not in a town, city, or village, and the ground at

such time was low and level, and it was not reasonably obvious to the defendant that such would be dangerous to persons passing along said alleged road in vehicles; said ditch or excavation being wide and shallow, with sloping sides." Plea 9: "At the time it is alleged that defendants cut said ditch it was not reasonably obvious to them that such ditch would be dangerous to persons crossing the same in vehicles on said alleged road." Plea 10: "That said alleged neighborhood road was not a public highway, either by grant, prescription, or dedication, but was only used by permission or toleration of the owner of the land over which the same passed, and that at the time of plaintiff's alleged injury the owner had reclaimed the same and revoked said permission."

The other pleas, to which demurrers were overruled, set up that at the time the alleged ditch was cut the defendants had no notice or knowledge of any road for vehicles along or over the land at the place where it is alleged that plaintiff was injured; that at the time the ditch was cut it was done by authority of the owner of the land, and at that time it did not appear that there was any road for vehicles, and no marks or other sign to indicate that it was used as a road for vehicles, and that defendant had no knowledge that it was so used; that the place where said ditch was cut was a place of natural drainage, and that the ditch was excavated only 10 inches and with sloping sides, and was used to facilitate the drainage, and was not apparently dangerous to persons passing over or along said land; that it was not dangerous, as it was excavated, to persons crossing the same on vehicles. The other pleas were pleas of contributory negligence, setting up that there was another and safe way known to plaintiff, and that he negligently used this way in the nighttime and without proper care to ascertain if it was all right, rather than the known, safe way.

Evidence was introduced tending to support the allegations of the complaint, and there was evidence also tending to support the pleas to which demurrers were not sustained. The assignments of error relating to the admission of testimony are sufficiently set out in the

opinion. In answering question number 2 in the opinion, the plaintiff stated that his practice as a physician had decreased 20 per cent. There was motion to exclude this answer, which was overruled. The witness made the same answer to question 3 as noted in the opinion. Question No. 5, noted in the opinion, was answered as follows: "My practice before I was injured amounted to about $150 on an average." Motion was made and overruled, to exclude both of these answers, separately. The following questions were propounded to E. J. Dunn, a witness for the defendant, and objection was sustained to each separately: "While the work was progressing, during the construction of said railroad, and before said ditch was cut, and before plaintiff was injured, was Mr. P. H. Lallande notified in any manner, or informed, that there was a neighborhood road, or a road for the passing of vehicles, over said land, which was crossed by said ditch?" "Was the firm of Dunn & Lallande Bros. informed or notified in any way, while said ditch was being constructed, that the same crossed a road, a neighborhood road, or a road used by vehicles?" Also, if his firm had ever been notified of the existence of any such road at any time before the plaintiff was injured.

At the conclusion of the testimony, the plaintiff requested the following charges which the court gave:

"(1a.) The court charges the jury that if they are reasonably satisfied from the evidence that the plaintiff, when traveling said road at the time when he attempted to cross said ditch, acted as a reasonably prudent man would have acted under the same circumstances, then he was not guilty of negligence."

"(2b) The burden of proof is on the defendant to make out their pleas of contributory negligence to the reasonable satisfaction of the jury."

"(3c) The court charges the jury that if they are reasonably satisfied from the evidence that the plaintiff, in attempting to cross said ditch, acted as a reasonably prudent man would have acted under similar circumstances, then he was not guilty of contributory negligence."

"(4d) The court charges the jury that it was not necessarily negligent as a matter of law for the plaintiff to have driven as the evidence showed he was driving at the time he was attempting to cross said ditch."

"(5e) The court charges the jury that it is for them to decide, from all the evidence in the case, whether the plaintiff was guilty of contributory negligence as averred in the complaint."

The following charges were refused to the defendants:

(1) General affirmative charge.

"(2) The court charges the jury that if the plaintiff saw and crossed the ditch a short while before the injury, and was in a few yards of the place of such injury, and at the time of the injury drove into the ditch in the dark and without a light, and that, had defendants had a light, he would have seen the ditch and the injury been avoided, the jury must find for the defendants.

"(3) The court charges the jury that if they believe the evidence of Dr. Gunn, taken in connection with all the other testimony, then he had notice of the existence of the ditch at the place of the injury, and he cannot recover.

"(4) The court charges the jury that if the plaintiff saw and crossed the ditch within 45 or 50 feet of the place of the accident a short while before the accident occurred, and drove into the ditch in the dark and without a light, then they must find for the defendant.

"(5) If the jury believe from the evidence that the defendants had no notice or knowledge, at the time said ditch was cut or scraped out, of the existence of any road for vehicles over the land where the plaintiff was injured, they must find for the defendant."

There were other charges presenting the same proposition in different ways and the following on other propositions:

"(28) If the jury believe from the evidence that the cutting of the ditch at the place where the injury occurred was reasonably necessary for the proper construction of the railroad, then it is not negligence for the

defendant to cut or have authorized the cutting of the same."

(29) Same as 28, except that it required that the jury could not find that the defendant was guilty of negligence in cutting the ditch.

The other charges requested were the affirmative charges as to each count and as to the defendants separately and jointly.

There was jury and verdict for the plaintiff for $4,-450.

Whitson & Dryer, and Brown & Leeper, for appellant.—The proof in this case failed to show that the road was a neighborhood road open to the use of all but kept in repair and subject to the control of persons in the neighborhood.—15 A. & E. Ency. of Law, p. 352. Where there is a license simply not coupled with an interest in the road it may be revoked at any time, even though under seal.—18 A. & E. Ency. of Law, p. 1143-44. A license or permission to pass over land is revokable.—*Noftsger v. Burkdall,* 148 Ind. 531; *Parrish v. Kaspure,* 109 Ind. 586. The court erred in reference to the testimony as to the plaintiff's ability to practice medicine as conveniently and agreeably as before his injuries.—*M. & E. R. R. Co. v. Mallett,* 92 Ala. 209. The court erred in reference to the admission of testimony of the decrease in plaintiff's practice in the future.—*Pulliam v. Schimpf,* 109 Ala. 184; *Gandy v. Humphries,* 35 Ala. 617. The damage sought to be proven are special damages not necessarily resulting from injury and could not be recovered for under the complaint.—*A. G. S. R. R. Co. v. Tapia,* 94 Ala. 227; *Dowdell v. King,* 97 Ala. 635; *Boggan v. Bennett,* 102 Ala. 400; *Ross v. Malone,* 97 Ala. 529. The part of the oral charge marked J was not within the issue.—*Bir. Ry. & Elec. Co. v. City Stables,* 119 Ala. 615. A want of knowledge respecting a disputed fact where a witness has opportunity of knowing such fact if it existed is competent evidence.—*Nelson v. Iverson,* 24 Ala. 9; *Blakey v. Blakey,* 33 Ala. 611; *Killen v. Lida,* 65 Ala. 505. The court's attention is specially called to the case of *Peters v. Southern Ry.*

*Co.* on the proposition that the appellant was entitled to the affirmative charge.

FRANK S. WHITE & SONS, for appellee.—The following authorities hold that it is actionable to make excavations in or near a traveled road or path, even by the owner without notice or warning to those who are accustomed to travel the same and that it is not at all necessary that it should be a public road. If this be true each count stated a cause of action and the demurrers were properly overruled.—1 Thompson on Negligence, § 1016; *Lewman v. Anderson,* 129 Ala. 170; *Graves v. Thomas,* 48 Am. Rep. 727; *Wheeler v. St. Joseph,* 2 Mo. App. 1319; *Lepnic v. Gaddis,* 72 Miss. 200; *Morrow v. Sweeney,* 10 Ind. App. 626; *Oliver v. Worcester,* 102 Mass. 489; *Beck v. Carter,* 68 N. Y. 283; *Corby v. Hill,* 4 C. B. 556. The court properly sustained demurrer to the 2nd plea.—*Stevenson v. Wright,* 111 Ala. 579. If the plaintiff's earnings are the result of professional skill or services the amount he has realized for a series of years shows what he is worth to himself and what he was capable of earning and affords the best basis on which the jury can estimate his loss from inability to follow his vocation.—*Alabama Great Southern R. R. Co. v. Yarbrough,* 83 Ala. 238; *A. G. S. R. R. Co. v. Frazer,* 93 Ala. 45; *Seaboard Mfg. Co. v. Woodson,* 98 Ala. 383. The damages sought to be proved by plaintiff were general and not special damages.—*Wade v. Leroy,* 20 Howard 34; *Luck v. Rippon,* 52 Wis. 200; *T. C. R. R. Co. v. Burnett,* 80 Tex. 536; *Herbert v. Beddel,* 21 N. Y. Sup. 305; *Ehrgott v. New York,* 96 N. Y. 264.

HARALSON, J.—In its merits this cause of action is simple, and is for the recovery of damages for personal injuries caused by the alleged negligence of defendants in cutting a ditch across a road, which had been for many years traveled by the public generally, on foot, on horseback and in vehicles, and negligently leaving it open, without taking sufficient precaution to prevent persons driving on said road from falling into the same.

This preliminary statement is made as justifying the course we take in not considering the many assignments of error in detail, since it would be almost interminable to do so, and in confining ourselves to such errors as are insisted on in argument and which relate to the real merits of the case.

The assignments of error are but few short of 100, and the transcript is very voluminous.

1. There were three counts in the complaint. The first alleges in substance, "that on and prior to the 22d of February, 1903, there was a neighborhood road leading from Longview Station in said county (Shelby) to the public road, running from Calera to Pelham, Ala.; that said road was then and had been for many years used by the public generally as a way or means of passage on foot, on horseback and in vehicles from Longview Station to said public road; that defendants within a short time prior to said date, made an excavation in or across said roadway where it passes through the town of village of Longview, from 12 to 15 inches deep, and from 5 to 6 feet wide, and negligently left said excavation open, without taking sufficient precaution to prevent pedestrians or people driving, or on horseback from falling into the same;" that while plaintiff was passing over said road at night, in a buggy drawn by one horse, his buggy was drawn or carried into said excavation with great force and violence, throwing him out or partially out of said buggy or vehicle, when he was kicked by the horse drawing said buggy, and on account thereof together with said fall, his body was greatly bruised, wounded, lacerated, etc.; that he was made sore, sick and lame; that being a practicing physician and surgeon, he has been caused to lose a great deal of time from his professional employment; had to spend a large sum of money in effecting and trying to effect a cure of his said injuries; has suffered great inconvenience, physicial pain and mental anguish on account thereof, and has been permanently disabled and injured, wherefore he sues, claiming damages as laid.

[Dunn & Lallande Brothers v. Gunn.]

The second count is practically the same as the first, except that it does not charge that the road was a neighborhood road.

The third differs but little from the first count. The cause of action as therein stated, and the damages claimed are in substance and effect the same as in the first. The averment is made that "the damages are particularly set out in the first count of the complaint to which reference is hereby made, to his damages aforesaid." This averment, of course, sets out by adoption, the averment of the first count, that plaintiff was a practicing physician and his loss of time and practice therein stated from said injuries.

The counts of the complaint were demurred to, on some 20-odd grounds, and the demurrers were overruled.

2. A public highway, as contradistinguished from a private highway, is one under the control and kept by the public; dedicated for that purpose by the owner; used by the public for 20 years, or, established in a regular proceeding for that purpose.—*Lewman v. Andrews*, 129 Ala. 174, 29 South. 692.

Every public thoroughfare is a highway, and a way open to all the people is a highway, whether it is strictly speaking public or private.

"Roads generally used by the citizens of a locality, but open to the general public, are public roads, although they may afford facilities for travel to only such persons as reside in the neighborhood, and may not be useful to the general public. * * * The character of the road does not depend upon its length, nor upon the places to which it leads, nor is its character determined by the number of persons who actually travel upon it. If it is free and common to all the citizens, then, no matter whether it is or is not of great length, or whether it leads to or from city, village or hamlet, or whether it is much or little used, it is a public road."—Elliott on Roads & Streets, §§ 11, 1, 3.

If the owner of land permits the public, or individuals to travel on his land on a way or road such as is described in the complaint, he cannot make pitfalls, or place dangerous obstructions in the traveled way, without first giving notice or warning to those making use

38

of the way. It that be so, a third person could not acquire the right to do so, under the owner's license or permission. So, if the railroad company, over whose right of way this road ran, could not obstruct the same, without notice to those it had allowed and those invited to travel over it, the defendants could not, even by the license or authority of the owners of the land, have dug this ditch, if the same was a dangerous obstruction, without notice of its existence.

A leading English case, similar in its general features to the one in hand, is that of *Corby v. Hill,* 4 Eng. Com. Law Reports, 554. Cockburn, C. J., in his opinion says: "The proprietors of the soil held out an allurement whereby the plaintiff was induced to come upon the place in question: they held out this road to all persons having occasion to proceed to the asylum (to which place the private road led), as the means of access thereto. Could they have justified the placing of an obstruction across the way, whereby an injury was occasioned to one using the way by their invitation? Clearly they could not. * * * If that be so, a third person could not acquire the right to do so under their license or permission." And Wiles, J., in his opinion in the same case, says: "The defendant (who was not the owner of the land, but who had permission of the owner to place building material on the road which ran over the land) had no right to set a trap for plaintiff. One who comes upon another's land, by the owner's permission or invitation has a right to expect that the owner will not dig the pit thereon, or permit another to dig a pit thereon, so that persons lawfully coming thereon may receive injury." To the same effect in principle, see 1 Thompson on Negligence; § 1016.

From the foregoing it will appear, that the complaint, in its several counts, states a good cause of action, and the demurrers were properly overruled.

3. The defendants filed pleas numbered from 1 to 19 inclusive. The court sustained demurrers to pleas 2, 5, 8, 9 and 10, and overruled them as to the others.

The first plea was the general issue. The second averred, that there was no neighborhood or public highway from Longview to the public road to Calera, as alleged

in the complaint. The first count averred that the road so leading from Longview to said public road was a neighborhood road, and the third count that it was a public road. This plea denying that there was a neighborhood or public road must, therefore, be construed as presenting the same defense as the general issue already pleaded in the first plea. The burden was already on the plaintiff, under the plea of the general issue, to prove that it was a neighborhood or public highway leading from Longview to the public road to Calera, and all that is pleaded by said second plea, was available in defense under the plea of the general issue. The second count did not aver that it was a neighborhood or a public road, but simply that it was a road used generally by the public. The plea did not confess, avoid or deny the allegations of the second count.

The fifth plea set up, that said road, if any, as referred to in the complaint, was so dim and indistinct that it did not appear to ordinary observation to be a road used by the public. The plea does not set up that defendants did not know that the road was traveled by the public. If they knew that it was traveled by the public, it would seem that it made no difference, if it was dim and indistinct. A road may be dim and indistinct, especially at night, and yet be one which is traveled by the public.

What is said above applies with equal force to the eighth plea. Furthermore, the counts in the complaint aver that the place of the injury was in the village of Longview, which the plea denies. The plea was in effect the general issue, as all set up in it was provable under the general issue.

The ninth plea sets up, that at the time defendants cut said ditch, it was not reasonably obvious to them that the same would be dangerous to persons crossing it traveling in vehicles along said road. It would occur to the ordinary mind, that if the defendants cut a ditch across said road, which was in fact dangerous to persons traveling in vehicles, to cross it, it could make no difference whether it appeared to defendants to be dangerous or not. They were responsible for the ditch, as it was actually cut, if it was a dangerous impediment

to travel, and liable to inflict injury on those passing, notwithstanding it did not appear to them, the defendants, to be dangerous. Not how the ditch appeared to defendants, as being dangerous or not, but its actual liability to do damage to others in passing over it, is the real point to be considered.

The tenth plea set up an immaterial issue. Revoking the right or revoking the permission to travel on said road, without notice by the owner to travelers, of such revocation, would not answer the claim of one injured without such notice.

Under the head of "Duty to Warn the Public of Revocation of License to Come upon One's Premises," Mr. Thompson says: "It is a sound and just conclusion that all owners or occupiers of land who has given to the public or to any particular person or corporation a license to come upon or to cross his premises, or to establish a private way or even a railway thereon, must, before exercising his power to revoke such license, anticipate that danger may occur therefrom to those who may be accustomed to use the license, and is therefore bound to notify them of such revocation, and to warn them of any fence, obstruction, or other dangerous means to which he may have resorted to exclude them from his premises."—1 Thompson on Negligence, § 1016, and many authorities there cited. It is not averred in the plea, when or how the revocation was made, nor that any notice was given to plaintiff or to any persons who were permitted to travel the road. For aught appearing, it may have been done only a brief time, and how long before the injury was inflicted on plaintiff, does not appear. The demurrer to the plea was properly sustained.

4. The sixteenth to twenty-fifth assignments of error, relate to the admission of testimony, having relation to the damage plaintiff sustained. The following questions which for convenience we number, were propounded by his attorney to the plaintiff, while being examined as a witness in his own behalf: "(1) Can you do your practice as conveniently and as agreeably as you could before you were injured? (2) State what per cent. your practice has decreased since you were injured. (3) You stated in your cross-examination that

your skill as a physician is as great now as it was before you were injured. Please state if your ability to prosecute your profession is as great now as it was before you were injured, and if not, what per cent. has your ability to practice your profession decreased since you were injured. (4) State what amount had been your average practice per month before you were injured. (5) What per cent. has the average amount per month you make out of your practice decreased since you were injured?"

The questions numbered 1 and 4 called for competent and legal evidence, and the objections to them were properly overruled. Those numbered 2 and 5 called for irrelevant testimony, such as was not within the issue made up by the pleadings. The complaint does not claim damages on account of loss of business sustained by the plaintiff on acount of the injuries sustained by him. But we are not to be understood as committing ourselves to the proposition, that such demages would be recoverable, even if laid in the complaint. The motion to exclude the answer to the 3rd question should have been sustained, for the same reason as above laid down for sustaining objections to questions 2 and 5, as not being within the issues made by the pleadings, and, in that it expressed the mere opinion of the witness.— *Hames v. Brownlee,* 63 Ala. 277; *A. G. S. R. R. Co. v. Tapia,* 94 Ala. 230, 10 South. 236.

5. Objection to questions propounded by defendants' counsel to witness E. J. Dunn, one of the defendants, while being examined as a witness as appears on pages 118 and 119 of the record, constituting assignments of error 26 and 27, were properly sustained. The witness was not asked what he knew, or of what he had been informed, and otherwise he could not know except by hearsay or opinion, what his partner or firm knew or did not know, or of what they were or were not informed. Witness was not all the time with the parties in charge of the work, and could not personally know what they had or had not been informed.—*Bailey v. State,* 107 Ala. 153, 18 South. 234. The court was fair enough in making its ruling, to state, that if the witness knew of any facts tending to show that either his

partner or firm did not know of the existence of the road, he could testify to such facts.

6. It appears that J. B. Adams owned and operated the Longview Lime Works, and the land immediately around Longview Station, on which the road in question existed. He was a nonresident and conducted his business through a superintendent, and defendants claimed to have had authority from such superintendent to cut the ditch across this road. Adams was asked by plaintiff, examined as one of his witnesses: "Did your superintendent have any authority from you, to give any one the right to cut a ditch along or over your land where this ditch was cut?" To this question defendants interposed several objections (Record, p. 122) which were overruled. Witness answered, that he did not. The fact that the superintendent of the lime works had no authority to authorize the cutting of this ditch by defendants was competent to be shown, if that were important; but, if it were true that this superintendent did allow defendants to cut it, that fact would not authorize them to so cut it, as to endanger a traveler along the road in the nighttime, who had no notice of the existence of the ditch. Moreover, if the superintendent of the lime works, was not the general superintendent of Adams, of all his business in this state, he had no authority, by virtue of being superintendent of the lime works, to interfere in this outside matter, which had no connection with the lime works.

7. After the conclusion of the evidence, the bill of exceptions states: "The court, at the request of the defendants' counsel made before the argument began, charged the jury in writing as follows." Here follows the written charge. It is not a violent construction of this language, to hold, that this written charge, as given, was prepared and requested by defendants' counsel, and not that it was a request for the court to charge the jury in writing as provided by section 3327 of the Code. If this is a proper construction of the request under consideration, it was not competent for counsel to afterwards except to portions of the charge, as they did. It may be said, however, that this construction is technical, and that it is obvious that the intention was

[City of Mobile v. Shaw.]

intended to be a request for the court to charge in writing. Lest we may do injustice to the defendant, we will add, that we have examined the portions of said charge excepted to, under the authorities above cited, when construed in connection with other portions, and with all of said charge, we find no error in them.

The court gave at the requested of the plaintiff, five writen charges numbered 1a, 2b, 3c, 4d, and 5e (pages 145, 146 of record). We have examined each of these charges, and under the authorities above quoted, fail to find reversible error in any of them.

9. The court gave 12 charges requested by the defendants, and refused 24 (pages 147, 151, 157 and 158). A careful review of said charges so refused, fails to disclose error in any of them. It is proper to remark. that a review of these charges to show their faults, would involve a great expenditure of time and trouble without any profit.

Reversed and remanded.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.