(79 South. 129)

NASHVILLE, C. & ST. L. RY. v. BLACKWELL. (8 Div. 57.)

(Supreme Court of Alabama. March 23, 1918. On Rehearing, May 9, 1918.)

1. APPEAL AND ERROR ⬅856(2) — ASSIGNMENT OF ERROR—GROUNDS OF DEMURRER.

Where a demurrer to a count of a complaint contains several grounds, the fact that one of the grounds was properly overruled by the court does not make an assignment of error that court erred in overruling the demurrer insufficient; the demurrer being to one count, and not to several separate pleadings or charges.

2. NEGLIGENCE ⬅32(2)—USE OF LAND—IMPLIED INVITATION.

Where a roadway under a shed was so situated that it was a convenient passageway from one street to another, and was so used by people generally, such use of the roadway was at the implied invitation of the railroad owning it.

3. NEGLIGENCE ⬅52—CONDITION OF LAND—OBSTRUCTIONS—INVITEES.

Where a railroad owning a roadway that was used by the public generally as a road from one street to another without objection on part of the railroad placed a rope across the roadway without notice thereof to public using it, it is liable to person who, driving an automobile on the road without knowledge of the obstruction, is injured thereby.

4. NEGLIGENCE ⬅136(27)—ACTIONS—TRIAL—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

Whether person injured while driving along a roadway because of a rope stretched across the road was guilty of contributory negligence in not seeing rope sooner was question for the jury.

5. TRIAL ⬅260(1) — REQUESTED INSTRUCTIONS.

Refusal to give requested instructions substantially covered by other instructions submitted was not error.

6. TRIAL ⬅244(2) — INSTRUCTIONS — EVIDENCE.

Instructions improperly stating the evidence and giving undue prominence to portions thereof were properly refused.

7. TRIAL ⬅240—INSTRUCTION—ARGUMENTATIVE INSTRUCTION.

An argumentative instruction was properly refused.

Sayre, Gardner, and Thomas, JJ., dissenting.

Appeal from Circuit Court, Madison County; R. C. Brickell, Judge.

Action by David S. Blackwell against the Nashville, Chattanooga & St. Louis Railway. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under Act April 18, 1911, p. 449, § 6. Reversed and remanded.

The facts and pleadings sufficiently appear from the opinion. Counsel for appellee insists that assignments of error 1 and 2 are too general under the rule that if one ground of demurrer was properly overruled, the assignment is not sufficient, and the court cannot be put in error for its rulings. These assignments are as follows:

(1) The court erred in overruling the demurrer to count 1 of the complaint.

(2) The court erred in overruling demurrer to count 3 of the complaint.

The following charges were refused to defendant:

(5) If you believe from the evidence that the public generally for purposes of their own, or for their own convenience were accustomed to passing over defendant's property from Clinton street in a northwesterly direction to Brown street, or the Orgain-Pollard coalyard with the permission, knowledge, and acquiescence of defendant's agents or employés, along a way or course west of the way, or course plaintiff was traveling, and west of and outside the shed at which the rope was tied, and that the custom of driving under the shed was confined for the most part to people having business with the railroad or at the depot, and the plaintiff on the occasion in question had no business with the railroad or at the depot, you would not be authorized to find that said custom authorized him to drive under the shed or constituted an implied invitation to him to do so.

(6) The fact, if it be a fact, that people (with the knowledge and acquiescence of defendant or its employés) were accustomed to use the way

or traveled course between Clinton and Brown streets lying west of and outside of said shed would not authorize the use of said way or course under the shed.

The following is a diagram of the locus in quo:

Spragins & Speake, of Huntsville, for appellant.  R. E. Smith, of Huntsville, for appellee.

THOMAS, J.  The suit was instituted by appellee against appellant railway company, and claimed for damages sustained by plaintiff in and on a roadway leading across defendant's lot whereon was erected its depot, etc., in the city of Huntsville.

The complaint comprised four counts. Demurrer was sustained to count 4, and the affirmative charge was given as to count 2. Demurrers to counts 1 and 3 were overruled, and thereupon issue was joined on the pleas of not guilty and contributory negligence.

[1] The assignments of error as to rulings on the demurrers to counts 1 and 3 are not within the rule announced in Thompson v. N., C. & St. L. Ry., 160 Ala. 590, 49 South. 340; Brent v. Baldwin, 160 Ala. 635, 49 South. 343; Ferrell v. Opelika, 144 Ala. 135, 39 South. 249; Ashford v. Ashford, 136 Ala. 631, 635, 34 South. 10, 96 Am. St. Rep. 82; Pearson v. Adams, 129 Ala. 157, 160, 29 South. 977; Kenan v. Lindsay, 127 Ala. 270, 273, 28 South. 570; Ætna Life Ins. Co. v. Lasseter, 153 Ala. 630, 45 South. 166, 15 L. R. A. (N. S.) 252; Fitts v. Phœnix Co., 153 Ala. 635, 45 South. 150; Western Railway of Ala. v. Arnett, 137 Ala. 414, 34 South. 997; M. J. & K. C. R. R. Co. v. Bromberg, Adm'r, 141 Ala. 258, 37 South. 395.  In each of these cases the assignments of error were directed to rulings on several separate pleadings or charges, and not to those on demurrer (containing several grounds) challenging one count or one plea.  The separate assignments of error here made are sufficient.

Defendant's counsel thus summarizes the evidence as to the locus in quo on the occasion of the accident:

"Defendant's passenger depot in the city of Huntsville is north of Clinton street, and west of Virginia street, and the depot grounds are bounded on the west by Brown street, and on the north by Holmes street.  The railroad tracks run just at the east side of the depot. Just west of the depot, and constituting a part

of the depot building is a shed, under which is a driveway on defendant's property.  This driveway on the occasion in question was being used by appellee, who had been at Orgain & Pollard's coalyard (also on appellant's property), and who was going southwardly towards Clinton street.  The driveway extends from Clinton street by way of Orgain & Pollard's coalyard, diagonally, to Brown street, dividing at or about the shed and south of the shed, one branch of it going under the shed and the other branch going outside and west of the shed.  A diagram of the locus in quo was offered in evidence," etc.

The reporter will set out the diagram in the statement of facts.

The evidence further showed that at the time of the injury Orgain & Pollard's coalyard was located upon a part of defendant's depot premises and yards, and that a switch ran from defendant's main line into said yard.  Plaintiff testified that people who transacted business with said firm, and the firm's members, used the roadway in question, and that "passing under the shed" was the "most direct way and the most used one" from said coalyard to Clinton street;  and that people, including plaintiff, drove under the shed in using said passway.  Witness Johnson testified that he had seen a number of people "driving under the shed, using it as a passage," and that it had been used "for some time" in going over to the coalyard of Orgain & Pollard, and that "it is used principally in going to the coalyard from Clinton street, and from Clinton to Holmes and to Brown streets," and that it was "the direct way from the square down Clinton street to Orgain & Pollard's coalyard."

On cross-examination the same witness (Johnson) stated that that was a "short cut" used by people "going to Orgain & Pollard's, and anywhere else they want to go," and that "many other people use it too"; that there was a good roadway "outside the shed just as well as under the shed, and it is plenty wide on the outside for people to go * * * without going under the shed; that it was his judgment that "a majority of people go on the outside of the shed"; that it is all open from the shed west to Brown street; that witness thought "from the north side of the passenger depot to Orgain & Pollard's the road is macadamized or improved in some way"; that he had seen some one making improvements on the road and putting rocks over it outside of the shed, but (that) under the shed it was smooth and even.  Witness Holmes described the place of the accident, and detailed the use of this road by the public, as follows:

"There is a shed that extends westwardly from the depot, and under that shed vehicles of all kinds pass.  I presume it is a public way, as the public seem to use it.  I think it is a macadamized road.  It has crushed rock around there.  I have seen large numbers of people passing through there, and I have been through there quite a number of times myself.  People pass along there coming down Clinton street and down to Orgain & Pollard's coalyard, and to the Farmers' Warehouse Company.  That

condition existed in December, 1915, and for several years past." "In going backward and forward from Clinton street to Holmes street I have driven outside of that shed, and also under it. I have used one way about as much as the other, and have not used either way so much. * * * I would guess that the passenger depot is 35 feet wide, east and west, and probably 50 feet long, north and south. It is perhaps twice as long as it is broad. I think the shed I referred to on the west side·is about the middle of the building. You can drive up under the shed and alight right on the depot platform. West of the shed there is a rock road or way diagonally from Clinton street northwestwardly to Brown street. I could not say that the use of this and depot building road is any more than that going under the shed. I don't know which is used most. I have gone under the shed as much as I have gone on the outside." "In my opinion, from my observation, Virginia street is used more than Brown street, and more than this way across by Orgain & Pollard's coal yard, and this way diagonally is used more than Brown street. Part of this way that passed under the shed was kept up as well or better than other streets in town, and there is a plain marked roadway from there to Brown street."

The plaintiff, in his own behalf, further testified that he had business that day with Pollard, at Orgain & Pollard's coalyard; that he came on the Holmes street side and from across the railroad by Orgain & Pollard's coalyard; was proceeding along this road or way from said coalyard and passing under the shed—which is the most direct route and the most used one from Clinton street; that a rope was tied across the way at or under the shed, the same being tied at its respective ends to the depot and the outside of the shed, the shadow of the shed covering the rope; that he could not or did not see the obstruction until the car was striking it, and that his damage was caused by the rope's breaking the windshield of the car and otherwise damaging it, and inflicting personal injury. Defendant's evidence tended to show that its servant, Ewing, placed the obstruction across the road "to prevent people from running under the shed," and that he was instructed so to do by Mr. Yarbrough, station agent for the defendant; that he saw others pass that way the morning he put the rope up; that did not drive into it—"they all went around it"; that he did not place a board on the rope "to indicate that it was there"—"about four feet high above the surface of the ground"; that there was a good roadway west of the shed where a majority of the people went, rather than under the shed.

The station agent's testimony was to the effect that "a man can go on the outside of the shed as comfortably as on the inside of the shed"; that the roadway under the shed was used mainly by persons going to the station for the purpose of embarking on trains; that "people generally use it as a passageway from one street to another; they go under the shed and on the outside. * * * They usually pass on the outside. * * * People who conduct business with Orgain & Pollard and Orgain & Pollard themselves use this roadway; they have to go under or outside the shed in using it."

[2] This evidence makes a case of implied invitation to the public, as well as to those having dealings with defendant's tenants, Orgain & Pollard, or their coalyard, to proceed by this roadway from street to street and to said place of business.

The principles of law having application to the foregoing facts have often been discussed by the courts.

[3] It has long been the declared rule that an owner of real estate may, without protest or objection, permit his premises to be used by the public in such manner, and for such a length of time, as that those of the public who go thereon or so use the same may reasonably presume that the owner will give some warning or notice of any change in the condition thereof, which would render unsafe a continuance of its use; and that if, under such circumstances and with knowledge of the same, the owner should place or leave a dangerous structure, or instrument, or obstruction, or defect, in the way, building, platform or premises so used, from which the owner might reasonably apprehend danger or injury to those accustomed to such use, he may not claim exoneration from liability in case injury should occur thereby. The reason is that the knowledge of the use, and of the condition thereof, under the law, imposes on the owner the duty to keep his premises in a reasonably safe condition for those who are permitted ·to come there, and not· to do an act that would unnecessarily hazard the safety of those so expressly or impliedly invited. Harriman v. P. C. & St. L. Ry. Co., 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507; Barry, Adm'r, v. N. Y. C. & H. R. R. Co., 92 N. Y. 289, 44 Am. Rep. 377; Beck v. Carter, Ex'r, 68 N. Y. 283, 23 Am. Rep. 175; Campbell v. Boyd, 88 N. C. 129, 43 Am. Rep. 740; Graves v. Thomas, 95 Ind. 361, 48 Am. Rep. 727; Bransom's Adm'r v. Labrot, etc., 81 Ky. 638, 50 Am. Rep. 193; Davis v. Chicago & N. W. Ry. Co., 58 Wis. 646, 656, 657, 17 N. W. 406, 46 Am. Rep. 667; Bennett v. L. & N. R. R. Co., 102 U. S. 577, 26 L. Ed. 235; Corby v. Hill, 4 C. B. (N. S.) 556; Carleton v. F. I. & S. Co., 99 Mass. 216; Anderson v. Seattle-Tacoma Interurban R. Co., 36 Wash. 387, 78 Pac. 1013, 104 Am. St. Rep. 962; Earle v. Hall, 2· Metc. (Mass.) 357, 358; 19· Eng. Rul. Cas. 60.

It is well settled in this state that if the owner or occupier of premises, either directly or by implication induces others to come upon them, he thereby assumes an obligation that such premises are in a reasonably safe condition, so that such invitee shall not be injured by traps and pitfalls thereon in the use of the premises for the purpose for which the invitation was extended. See authorities, and pertinent discussions of the subject, to be found in Mudd et al. v. Gray, 75 South. 468;[1] Southern Railway Co. v.

[1] 200 Ala. 92.

Bates, 194 Ala. 78, 69 South. 131, L. R. A. 1916A, 510; Scoggins v. A. & G. P. C., 179 Ala. 213, 221, 222, 60 South. 175; Evans v. Ala.-Ga. Syrup Co., 175 Ala. 85, 56 South. 529; A. G. S. Ry. Co. v. Godfrey, 156 Ala. 202, 212, 47 South. 185, 130 Am. St. Rep. 76; Montgomery & Eufaula Ry. Co. v. Thompson, 77 Ala. 448, 456, 54 Am. Rep. 72.

Of a mere licensee, Mr. Justice Mayfield (in Scoggins' Case, supra) observes that one who goes upon the premises of another on business of his own, not connected with the business transacted or carried on there, can claim from the owner or occupant of the premises no further duty than that he refrain from putting traps or pitfalls in the licensee's way. Yet this duty is emphasized by the decisions. The law requiring the owner of premises to see to it that they are reasonably safe from traps and pitfalls has been often reaffirmed by this court. A. G. S. Ry. Co. v. Crocker, 131 Ala. 584, 31 South. 561; Athey v. T. C., I. & R. R. Co., 191 Ala. 646, 649, 68 South. 154; Clover Creamery Co. v. Diehl, 183 Ala. 429, 63 South. 196; A. S. & W. Co. v. Clements, 146 Ala. 259, 40 South. 971; O'Brien v. Tatum, 84 Ala. 186, 4 South. 158; Scheuermann v. Scharfenberg, 163 Ala. 337, 50 South. 335, 24 L. R. A. (N. S.) 369, 136 Am. St. Rep. 74, 19 Ann. Cas. 937; T. C., I. & R. R. Co. v. Burgess, 158 Ala. 519, 47 South. 1029.

Of traps, pitfalls, and "attractive nuisances," the recent case of Thompson v. Alexander City Cotton Mills Co., 190 Ala. 184, 67 South. 407, Ann. Cas. 1917A, 721, well states the rule. The evidence is without dispute that the rope was tied across this way or road by one of the defendant's servants, acting under the directions of defendant's agent having authority over the depot or station in question; that no plank or guard was exhibited, or notice given of the presence of the rope across the road; that the rope was old and dark of color, and was located within the shadow of the station or shed, as a part thereof and attached thereto; and that, as plaintiff proceeded on the way, on the morning and at the time of his injury, the sun was shining in his face and casting the shadow of the shed toward him and over the rope. He explained, "If the rope had been lower down, it would have been in the sunshine, but the shadow covered the rope."

[4] It was a jury question whether he was negligent in not sooner perceiving the obstruction. But it is not contradicted that immediately upon perceiving the obstruction he did all in his power to stop his car before striking it, and that his efforts were unavailing.

From the foregoing authorities it is clear that counts 1 and 3, detailing the facts, sufficiently stated a cause of action, and were not subject to the demurrer assigned. Under the evidence the affirmative charges re-quested by the defendant were properly refused.

[5] Of the special charges refused to the defendant, we may observe that charges 8 and 9 were substantially covered by other written charges given by the court at defendant's request, and by the court's oral charge (Boyd v. State, 154 Ala. 9, 45 South. 634); charge 8 by given charges 7, 10, and 13; and charge 9 by given charge 7.

Assignment of error numbered 10 is predicated on the refusal of defendant's requested written charge 14. This charge having reference to count 2, which at defendant's request had been theretofore eliminated by charge of the court, nothing is presented for review.

[6, 7] Special charges 5 and 6 do not properly state the evidence as to the use of the roadway at the point where the injury occurred. Furthermore, they give undue prominence to portions of the evidence. L. & N. R. R. Co. v. Handley, 174 Ala. 593, 605, 56 South. 539; Hanchey v. Brunson, 175 Ala. 236, 244, 56 South. 971, Ann. Cas. 1914C, 804. Said charges were also objectionable, in that they were argumentative or misleading. Barbour v. Shebor, 177 Ala. 304, 312, 58 South. 276; Bowles v. Lowery, 181 Ala. 603, 62 South. 107; N., C. & St. L. Ry. v. Crosby, 183 Ala. 237, 249, 62 South. 889.

The court properly overruled defendant's motion for a new trial on the ground that the verdict was excessive. Central of Georgia Ry. Co. v. White, 175 Ala. 60, 56 South. 574; N., C. & St. L. Ry. v. Crosby, 194 Ala. 338, 351, 352, 70 South. 7. The case of Richardson v. B. C. M. Co., 116 Ala. 381, 22 South. 478, is not contrary to the rule declared in Cobb v. Malone, 92 Ala. 630, 635, 9 South. 738, on which the foregoing decisions of White and Crosby are rested. The evidence of the attending surgeon was to the effect that a vein or an artery, or a nerve, was cut; that the end of the finger "was numb for a considerable time"; that (though injured on December 25, 1915) on the date of the trial (February 21, 1917) the thumb was "a little stiff," and that plaintiff "may never have the full use of his thumb again"; that he "could not get it to bend as far as it should"; that it would be difficult to tell whether "nature had restored that nerve." Plaintiff testified that his thumb was still stiff, and that he would never "have the use of it fully again"; that he sustained other cuts, and was treated by the physician for two weeks; and that his automobile was slightly damaged.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

On Rehearing.

PER CURIAM. A majority of the court, composed of ANDERSON, C. J., and Mc-

CLELLAN, MAYFIELD, and SOMERVILLE, JJ., are of the opinion that the trial court erred. in not sustaining the defendant's demurrer to count 3 of the complaint. It does not show that the way in question was a public highway, or that the plaintiff was going over same other than as a bare licensee, and, being a mere licensee, he was not within the protection of the degree of negligence charged. The way not being a public one, tne mere permissive use of same, short of such a period as would convert it into a public highway, made the plaintiff nothing more than a licensee. Pleading must be most strongly construed against the pleader, upon demurrer, and under this rule the said count 3 does not charge that the plaintiff was at the place of injury upon the invitation, express or implied, of the defendant. A. G. S. R. R. Co. v. Godfrey, 156 Ala. 202, 47 South. 185, 130 Am. St. Rep. 76; Scoggins v. A. & G. P. Co., 179 Ala. 213, 60 South. 175; Campbell v. Lunsford, 83 Ala. 515, 3 South. 522. Nor does the count charge. that the rope. was what might be termed such a snare or pitfall as to give a bare licensee a right of action for the placing of same at the point in question. In the case of Barney Coal Co. v. Hyche, 197 Ala. 228, 72 South. 433, while the case was affirmed upon a complaint no better in this respect than count 3 of the present complaint, it will be noted from the opinion upon rehearing that the court did not indorse the correctness of the count, but simply held that the demurrer was not sufficient to present the defect contended for by appellant. It will also be observed that the cases of Dunn v. Gunn, 149 Ala. 583, 42 South. 686, and Lewman v. Andrews, 129 Ala. 170, 29 South. 692, were shaded in said opinion, and there may be expressions in said cases not thoroughly in harmony with this holding, but which are qualified or overruled in so far as they may conflict with the present holding, which we think is fully sustained by a long line of decisions by this court.

The rehearing is accordingly granted; the judgment of affirmance is set aside, and the cause is reversed and remanded.

THOMAS, J. (dissenting). To count 3 demurrer was directed to effect that it was shown in said count that plaintiff was not an invitee, express or implied, but was a mere licensee. The demurrer was in my judgment properly overruled. The count is as follows·

"Plaintiff claims of defendant the sum of $1,-500 damages for this, that on or about the latter part of December, 1915, the defendant, a corporation, owned and operated a railroad from Decherd, Tenn., to Hobbs Island, Ala., through the city of Huntsville, in Alabama, for the purpose of carrying freight and passengers for hire as a common carrier, and in said city of Huntsville maintained a depot for the reception and accommodation of its passengers, and built and maintained a driveway leading to and from and by its said depot and under a shed, which is a part of and extends westward from the same, and plaintiff avers that a large number of people were accustomed to pass along said driveway going to and from Clinton street to the Farmers' Warehouse Company, and the Orgain-Pollard Coal Company and to Holmes street, all in said city of Huntsville, and that he (the plaintiff) had passed backwards and forwards a great number of times over and along said driveway, and that it was known to the defendant, its servants, agents, or employés, that the public in large numbers used said driveway in passing from said points. And plaintiff further alleges that on or about the latter part of December, 1915, as he was passing along said driveway in his automobile going in a southward direction and in attempting to go under said shed his automobile ran into a rope that was stretched across the same about four feet high and attached at one end to a post or pillar that supports said shed, and at the other end to the ·side of said depot, and that thereby the windshield and top was broken, wrenched and torn from said car, and that he was cut and bruised and injured about the hands and body, so that he suffered both physical pain and mental anguish, and so that he. had to expend sums of money in procuring medical aid. And plaintiff alleges that the proximate cause of his injuries was the negligence of the defendant, its servants, agents, or employés, in erecting and maintaining said rope across said driveway; all to his injuries in the sum as above alleged."

I cannot concur in the granting of the rehearing for the failure of the trial court to sustain demurrer to this count. The averred facts were, that defendant built and maintained the driveway in question in the city of Huntsville as a part of its passenger and freight depot facilities, leading under the porte-cochère or shed, a part of said depot building; that said driveway connected with two of the public streets in said city, and the general public, or a large number of the people thereof, and the plaintiff were accustomed to use said driveway from Clinton to Holmes street; and that this fact was known to defendant's agents in charge of said depot and driveway. The following authorities support the trial court in overruling demurrer to count 3: Dunn v. Gunn, 149 Ala. 583, 42 South. 686; Lewman v. Andrews, Adm'x, 129 Ala. 170, 29 South. 692; Southern Railway Co. v. Bates, 194 Ala. 78, 69 South. 131, L. R. A. 1916A, 510; A. G. S. R. R. Co. v. Godfrey, 156 Ala. 202, 47 South. 185, 130 Am. St. Rep. 76; Montgomery & Eufaula R. R. Co. v. Thompson, 77 Ala. 448, 54 Am. Rep. 72; Corby v. Hill, 4 Eng. Com. Law Rep. 554; 1 Thompson on Neg. § 1016, pp. 593, 594.

A careful consideration of the ruling in Barney Coal Co. v. Hyche, 197 Ala. 228, 72 South. 433, is persuasive that that decision does not militate against the view I have expressed, because the roadway in that case was near the defendant's coal tipple, and not through or near a public place as, by count 3, the roadway in the case at bar is alleged to be. The count in the instant case condemned by a majority of my Brothers in my judgment sufficiently charged the de-

fendant with the duty not to unnecessarily injure those who, by implied invitation, were on or proceeding along said driveway in the city of Huntsville. The plaintiff was not a mere licensee, but an implied invitee, when he received his damage and injury, the proximate result of defendant's violation of its duty to him as such invitee on said driveway.

GARDNER, J., concurs with the writer in the above dissent.

SAYRE, J. (dissenting). I have thought count 3 of the complaint sufficient for the reason, to state it very briefly, that the circumstances and conditions alleged showed that plaintiff was on defendant's premises by an implied invitation or license, and hence that defendant owed plaintiff a duty in the premises. Defendant had a right, of course, to close the way whenever it pleased, but its duty was to exercise care in doing so; it had no right to adopt means which, in view of the circumstances and conditions alleged, would probably result in injury to the next passer, tantamount thus in effect to a trap or pitfall. Montgomery & Eufaula Railway Co. v. Thompson, 77 Ala. 448, 456, 54 Am. Rep. 72. As for the breach of the duty thus shown, having in mind the cases cited as authorities in B. R., L. & P. Co. v. Gonzales, 183 Ala. 273, 277, 61 South. 80, Ann. Cas. 1916A, 543, I thought it sufficiently alleged.