## Moody v. Louisville & Nashville Railroad Company.

(Decided June 12, 1931.)

PETRIE & STANDARD for appellant.

S. Y. TRIMBLE and A. M. WARREN for appellee.

542

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

At Guthrie, in Todd county, Ky., the appellee's Louisville and Memphis line crosses its Henderson and Nashville line practically at right angles. The depot and a hotel are located south of the Henderson and Nashville line, and are on opposite sides of the Louisville and Memphis line; the hotel being on the west side of that line. There are two parallel tracks connecting the Henderson and Nashville line with the Louisville and Memphis line and forming a sort of hypotenuse of a right angle triangle whose other sides are the Henderson and Nashville line and the Louisville and Memphis line. The hotel and an annex to it are situated within this triangle. The property upon which the hotel and annex are located as well as the hotel building and annex are owned by the appellee, but the hotel and its annex are leased to the Crescent News Company which operates them. The streets of the city of Guthrie come up to the railroad property at this point, but do not extend into, over, or across it. For the most part the town lies to the south and west of the hotel, and people, in going from the city to the hotel and the depot, use the streets until the railroad property is reached, and then a cinder path upon that property, which path crosses over the connecting tracks forming the hypotenuse and then runs to the entrance of the hotel. Those wishing to go to the depot cross the tracks between the hotel and the depot, and thus they arrive at their destination. Of course those wishing to go from the depot or hotel to the city make the trip in the reverse order. On the hotel side of the hypotenuse tracks, the appellee some time ago sunk a row of iron posts across the cinder path and immediately adjacent to these tracks. The posts are about 2½ feet high, and are located about 3 feet apart. The purpose of this row of posts is to keep automobiles and trucks off the cinder path and from using it to get to the entrance of the hotel.

In the hotel itself there has been maintained for a long time a number of mail boxes where the patrons of the hotel may lodge their letters going east, north, south, and west, as the case may be. These boxes are emptied by the porter of the hotel and their contents placed by him on the proper trains as they pass by. The post office in the town of Guthrie closes about 6 o'clock in the eve-

ning, and it seems that for a long time it has been the habit of the people of the town who wish their letters to go out on the night trains to go down to the hotel and post them in the letter boxes there. The appellant, who has practiced his profession of dentistry in the town of Guthrie for a number of years, and who is and was at the time of his accident thoroughly familiar with the conditions as we have thus described them, went down to the hotel on the evening of November 17, 1928, it then being very dark, misty, and rainy, for the sole purpose of posting a private letter of his. On his return, while walking along the cinder path and before reaching the hypotenuse tracks, he met up with a friend who was also headed for the town. They continued their journey together, and whilst engaged in conversation and whilst still walking on the cinder path, appellant struck his knee against one of the iron posts across the path, and, according to his testimony, injured it very severely. Although there was an electric light maintained by the railroad overhead on a telephone or telegraph post near these iron posts, it was not burning this night, and there was no other light to show up these iron posts to pedestrians. Appellant brought this suit against the appellee to recover damages for the injuries he thus sustained. On the trial, after appellant had completed the introduction of his testimony, which established the facts as above outlined, the court peremptorily instructed the jury to find for the appellee, and, from the judgment entered on that verdict, this appeal is prosecuted.

The trial court rested its action in thus instructing the jury on the theory that the appellant at the time of the accident was at the best but a licensee on the property of the appellee, and being such, took the property as he found it. Hence the appellee was not responsible, so far as the appellant is concerned, for its failure to light or guard these iron posts. The appellant concedes that, if this theory as to his being a licensee be sound, the court correctly instructed the jury, but he insists that at the time of the accident he was not a licensee, but an invitee, and that is the pivotal point in this case.

In Louisville & N. R. Co. v. Snow's Adm'r, 235 Ky. 211, 30 S. W. (2d) 885, 888, we said:

"As pointed out in the cases cited above the owner or occupier of land owes a more limited duty

to a mere licensee than he does to an invitee. However, the distinction between a licensee and an invitee is oftentimes shadowy and indistinct. Leonard v. Enterprise Realty Co., 187 Ky. 578, 219 S. W. 1066, 10 A. L. R. 238. The distinction is generally stated to be that invitation is inferred where there is a common or mutual advantage, while license is inferred where the object is the mere pleasure or benefit of the person using it. Sage's Adm'r v. Creech Coal Co., [194 Ky. 415, 240 S. W. 42], supra; Southern Ry. Co. v. Goddard, 121 Ky. 567, 89 S. W. 675. 28 Ky. Law Rep. 523, 12 Ann. Cas. 116. The decedent was not an invitee in the technical sense that one going upon the premises of another for their mutual advantage is an invitee, but the facts of this case bring it within the class of cases in which the doctrine has been recognized and applied that, when the owner, by his conduct, has induced a party to use a private way in the belief that it is open for the use of the public, the duty is imposed upon him of maintaining the way in a reasonably safe condition. Where one by his conduct has induced the public to use a way in the belief that it is a street or public way, which all have the right to use, and where they suppose they will be safe, his liability should be coextensive with the inducement or implied invitation. Sweeny v. R. R. Co., 10 Allen (Mass.) 368, 87 Am. Dec. 644; Holmes v. Drew, 151 Mass. 578, 25 N.E. 22; Rachmel v. Clark, 205 Pa. 314, 54 A. 1027, 62 L. R. A. 959; B. & O. Southwestern R. Co. v. Slaughter, 167 Ind. 330, 79 N. E. 186, 7 L. R. A. (N. S.) 597, 119 Am. St. Rep. 503; Campbell v. Boyd, 88 N. C. 129, 43 Am. Rep. 740; Weidman v. Consolidated Gas, Electric Light & Power Co., 158 Md. 39, 148 A. 270; Nashville, C. & St. L. R. Co. v. Blackwell, 201 Ala. 657, 79 So. 129; Leighton v. Dean, 117 Me. 40, 102 A. 565. L. R. A. 1918B, 922.

"In Zetley v. Jame Realty Co., 185 Wis. 205, 201 N. W. 252, 254, the court said: 'Where premises adjoining a public way are so connected with the public way as to indicate a public use, an invitation to so use is implied. In such case the owner is bound to use ordinary care to protect users of such way from personal injury by reason of such use.' In Printy v. Reimbold, 200 Iowa, 541, 202 N. W. 122, 205 N. W. 211, 212, 41 A. L. R. 1423, the court,

although it held that under the facts of the particular case the plaintiff's intestate did not come within the above rule, said in regard to the rule:

"'It is conceded that she was not an invitee within the general doctrine that one going upon the premises of another for their mutual advantage is an invitee, but it is contended that the facts of this case bring it within the class of cases in which the defendant by his conduct has allured or induced a party to use a private way in the belief that it is open for the use of the public, thereby imposing the duty upon him of maintaining the same in a reasonably safe condition. The doctrine, as stated, is familiar, and has been recognized and applied in numerous cases in this state. Ambroz v. Cedar Rapids Electric Light & P. Co., 131 Iowa 336, 108 N. W. 540; Connell v. Keokuk Electric R. & Power Co., 131 Iowa 622, 109 N. W. 177; Upp v. Darner, 150 Iowa 403, 130 N. W. 409, 32 L. R. A. (N. S.) 743, Ann. Cas. 1912D, 574.'"

Applying the principles thus discussed in the foregoing excerpt, we held in the Snow case that Snow at the time of his death was an invitee because the bridge upon which he was killed had been maintained by the railroad for use by the public generally as a public way.

Appellant insists that under the facts of the instant case he was an invitee both under the definition of an invitee as generally stated and under the definition as developed by the line of cases discussed in the foregoing excerpt and holding that, when the owner, by his conduct, has induced a party to use a private way in the belief that it is open for the use of the public, the duty is imposed upon him of maintaining the way in a reasonably safe condition.

In support of his first position, appellant argues that the rent which the appellee receives from those operating the hotel property must necessarily depend on the profit which the lessees can make from the operation of the hotel, and hence anything which helps to popularize the hotel is, in the last analysis, of advantage to the railroad. It is a little difficult, though, to understand how the free use by appellant, who was no patron, actual, or, so far as this record shows, even prospective, of the hotel, of the facilities afforded by the hotel for the use of its patrons, the maintenance of which imposed a cost

upon the hotel, added to the profits of the lessee or could in any manner be said to be of mutual advantage to appellant and appellee. Plainly, the mailing of this letter in the hotel mail box thus, imposing upon the hotel people the task of taking it out and putting it on the right train without a cent of return to it, was only for the benefit of the appellant, unless his argument, based on the case of Atchison, Topeka & Santa Fe R. Co. v. Jandera, 24 Okl. 106, 104 P. 339, 24 L. R. A. (N. S.) 535, 20 Ann. Cas. 316, be sound. In that case, Jandera went to the depot of the railroad for the purpose of posting a letter on a mail train as it stopped at the station. While passing along a path leading from a public street to the depot platform, Jandera fell into a hole and was injured. The question was whether he was at the time of his accident an invitee or not. The court held that he was, placing its decision upon the ground that, because the railroad had a contract with the government to carry the mails, its compensation for so doing depending on the amount of mail carried; it was of mutual advantage to the railroad and Jandera that he mail this letter on its trains, as it helped to swell the amount of mail carried. Without determining whether this Jandera Case be sound or not, we are at least of the opinion that it stretched the rule of "mutual advantage" about as far as it can be stretched without breaking it. But taking it at its face value, we are further of the opinion that the facts of the instant case do not bring it within the rule of the Jandera Case. Appellant, at the time he was hurt, had not gone to the depot for the purpose of mailing a letter on a mail train but for the purpose of depositing it in one of the mail boxes in the hotel. So far as the record shows, there was no train then at the depot and none was due or expected in the immediate future. Had appellant mailed his letter up town, appellee would have hauled it precisely the same as it did haul it after it had been put in the hotel box. The placing of the letter in the mail box at the hotel resulted in no more advantage to the appellee than the placing of it in a mail box on any of the corners of the streets of Guthrie. The real purpose of this visit was the effort on appellant's part to avail himself of a favor on the part of the lessee of the hotel in the taking care of his letter and later putting it on a night train, thus insuring its earlier departure than would have been the case had the appellant mailed his letter up town. We are unwilling to extend the Oklahoma

case to the facts of this one. Appellant, then, failed to bring himself within the usual definition of the word "invitee."

Do the facts of this case bring it within the rule of the Snow Case? That case is based on the principle that, where one by his conduct has induced the public to use a way in the belief that it is a street or public way which all have the right to use, his liability should be coextensive with the inducement or implied invitation. The facts of the instant case do not bring it within that rule. The cinder path, here in question, was no prolongation of a public street for the use of the public generally in crossing the railroad tracks or going in and about the town. It was very obviously an approach from the public street to the hotel and depot. There is no evidence in the record that the public used this path at all except to go to and from the hotel and depot. Appellee did nothing in the maintenance of this path to induce the public to use it in any belief other than its use was coupled with some business the user had at the depot or the hotel. And there is no evidence that its use was otherwise than coupled with the transaction of some business the user had at the hotel or depot. Appellant knew that this cinder path was on the property of the appellee and that it was not a public street. There is no evidence in the record that the public generally was ignorant of that which the appellant knew. The placing of the posts across this path by the appellee was some notice of the private character of the path. Were this cinder path to be assimilated to the status of the bridge in the Snow Case, then every approach to a railroad station though on railroad property would have to be considered as a public way or street, so far as this doctrine of invitee is concerned. Plainly and clearly appellee did not so maintain this cinder path under the facts of this case as to induce any belief on the part of the public that it was part of any public street or way as that the public generally had the right to use it, which being true, appellant failed to bring his case within the rule laid down in the Snow Case.

From the foregoing, it follows that, appellant having failed to show that at the time of his accident he was more than a mere licensee at the best, the lower court correctly instructed the jury to find for appellee, and its judgment is affirmed.