# Birmingham Ry. L. & P. Co. *v.* Colbert.

## *Injury to Servant.*

(Decided November 7, 1914. Rehearing denied December 17, 1914. 67 South. 513.)

1. *Appeal and Error; Harmless Error; Pleading.*—Where the defendant had a plea charging that plaintiff was negligent in that he made no effort to stop his car until it was too late, he had the full advantage under such plea of pleas setting up a violation of the company's rule as to stopping at crossings and waiting for signals, and of the pleas referring to the speed of the car, when he first undertook to stop it.

2. *Same; Estoppel; Admission.*—A charge requested by defendant that if the evidence was believed, and there was a finding for plaintiff, plaintiff could not be awarded more than nominal damages for decreased earning capacity, was a concession or admission that the complaint claimed damages for decreased earning capacity.

3. *Trial; Reception of Evidence; Objections.*—Where the motor-man's negligence in not making an effort to stop the car until it was too late, was in issue, the evidence of another motorman who had often been over the route as to the regular place of beginning to stop the car, between the last stop and the crossing, was admissible over the specific objection that it was not shown that plaintiff stopped at that place, such objection being inapplicable to the question as to the regular place to begin to stop.

4. *Charge of Court; Directing Verdict.*—Where the evidence is open to a reasonable inference of a material fact unfavorable to the right of recovery of the party requesting it, the affirmative charge should not be given.

5. *Same; Abstract.*—Where there was evidence tending to show a permanent injury, and special damages for diminished earning capacity was claimed, a charge asserting that if the jury believed the evidence and found for plaintiff, it could not award him any more than nominal damages for decreased earning capacity, was not abstract.

6. *Damages; Loss of Time; Decreased Earning Capacity.*—The expression, "loss of time" and "decreased or diminished earning capacity" are not synonymous as elements of damage in action for personal injury; the expression, "loss of time" signifying a loss of those earnings which accrue from employing time in labor or business, and import a material distinction from "decreased or diminished earning capacity" and unles observed, might sanction a double recovery.

7. *Same; Loss of Time.*—Loss of time and decreased or diminished earning capacity occasioned by a personal injury are special damages, and must be specially claimed in the complaint, to be recovered; an allegation that because of the injury, plaintiff was rendered for a long time unable to work and earn money, only meant that he had lost time from his labor.

8. *Same.*—The law implies some diminished earning capacity from a permanent injury.

9. *Same.*—As loss of time may not result in any damages whatever, the law does not imply even nominal damages.

10. *Same; Nominal Damages; Evidence.*—Where there was evidence of permanent injury, and impaired future earning capacity but no data from which compensatory damages for decreased earning capacity could be fixed, except the evidence of the wages earned at the time of the injury, and the wages earned between the injury and the trial, the defendant was entitled to have the jury directed against the award of more than nominal damages for decreased earning capacity.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Action by James W. Colbert against the Birmingham Railway, Light & Power Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The substance of the complaint sufficiently appears, as does plea 3, from the opinion of the court. Pleas 4 and 6 are as follows:

(4) To each count of the complaint severally and separately defendant says that, at the time of said collision, the defendant had a rule of force requiring the motorman in charge of each car crossing the said crossing, at which the said collision occurred, to stop the same before causing the car to go upon the said crossing, and not proceed across the said crossing until being signaled to do so by the conductor of the car, and plaintiff knew of the existence of the said rule, and also knew that, in order to stop said car, it would be necessary to commence making efforts to do so earlier than would be the case had the alleged defect not existed, and he also knew of the existence of the said defect, and nevertheless plaintiff deferred making any effort to stop the same with the appliances on the said car for stopping the same, in the condition in which they then were, and which condition was then known to plaintiff, and plaintiff thereby proximately contributed to his said alleged injury.

(6) To each count of the complaint separately and severally defendant says that plaintiff knew of the alleged defect, and that, by reason thereof, it was likely or probable that said car, when run at the rate of speed and in the manner in which it was being run when plaintiff first undertook to stop the same at the time of said collision, could not be stopped with the appliances at hand for the stopping of the same before some part of said car got onto the said crossing, at which the said collision occurred, and knew that a rule of defendant required him to stop the said car before any part thereof got onto the said crossing, and to defer crossing said crossing until signaled to do so by the

conductor of the said car, which rule was then and there in force, and knowing that there was danger of collision with an engine or train on the railroad on which said engine was being run when said collision occurred if he undertook to cross said crossing without such signal, and plaintiff voluntarily and without any necessity therefor ran said car at the speed and in the manner in which it was being run when he first undertook to stop the same as aforesaid, thereby proximately contributing to his alleged injuries, when he could, as he well knew, have run the same before any part thereof got onto the said crossing, and thereby have avoided said collision, although the said defect existed.

TILLMAN, BRADLEY & MORROW, and FRANK M. DOMINICK, for appellant.

HARSH, BEDDOW & FITTS, for appellee.

GARDNER, J.—This action was brought by the appellee, employed by the appellant as a motorman on one of its street cars, for injuries sustained in a collision of said car, which was at the time being operated by said appellee as such motorman, with an engine on the track of the Louisville & Nashville Railroad; the said accident occurring at the crossing of the two tracks.

The complaint originally contained four counts, but counts 3 and 4 were charged out by the court at the request of the defendant (appellant here). Counts 1 and 2, upon which the cause was submitted to the jury, were framed under subdivision 1 of the Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, § 8657]); the first relying for recovery upon the defective brakes on the car, and the second upon the defective car itself.

[Birmingham Ry. L. & P. Co. v. Colbert.]

The defendant interposed a number of pleas of contributory negligence. Demurrers were sustained to pleas, 2, 4, 5, 6, 7, and 9, and issue was joined on pleas 1 (the general issue), 3, 8, and 10.

(1) The rulings of the court sustaining demurrers to pleas 4 and 6 constitute the first four assignments of error.

Plea 3 charged the plaintiff with negligence which proximately contributed to his alleged injuries in this: "Plaintiff, knowing of the existence of the alleged defect, and knowing that, in order to stop the said car before it would get in such a position as to be struck by any engine or train which might cross the crossing at which the said collision occurred, efforts would have to be made earlier than would be the case had such defect not existed, negligently deferred making any effort to stop the said car soon enough to prevent the same from getting in such a position as to be struck by the said engine, as alleged therein."

The negligence charged is in substance that the plaintiff waited until too late to attempt to stop the car; that he deferred making any effort to stop the car until too late.

A careful examination of pleas 4 and 6 convinces us that the gist or substance of these pleas is the same as that of plea 3, expressed in different language. It is insisted, however, that pleas 4 and 6 set up a violation of a rule of the company as to stopping at such crossing and waiting for signal to cross, etc. While this is true, yet such averments are joined with averments of the character found in plea 3, and would therefore be of no avail without proof also of those of such character as in plea 3. The pleas, therefore, relieved defendant of nothing required by plea 3, but required proof

of substantially the same matter, and these averments but added greater burden to the defendant.

The fact that the rule added precautions as to starting again after stopping is immaterial, of course, when no stopping is shown. True, plea 6 makes reference to the speed of the car at the time plaintiff first undertook to stop the same, but such averments of the plea show that they are rather of evidential character of the same matter set up in plea 3; that is, in substance, that plaintiff commenced stopping the car too late.

It is therefore unnecessary that we pass upon the sufficiency of pleas 4 and 6, as we are of the opinion that the defendant received the full benefit thereof under plea 3, which did not impose upon defendant some of the burdens of each of said pleas, and which imposed no burden not imposed by both of the others. If there was any error in the ruling of the court as to said pleas—a question not determined—it was without injury.

(2) Whether or not the plaintiff deferred making any effort to stop the car until too late was made an issue by the defendant's pleas. The witness Underwood, who had been a motorman for more than two years and had run over this route a great many times was asked by plaintiff where was the regular place to begin to stop the car, between Twenty-Ninth avenue (the last stop) and the Louisville & Nashville crossing. The question was objected to upon the ground that it called for immaterial, irrelevant, incompetent, and illegal testimony. If there was a regular stopping place known to this witness, it cannot be said to have been immaterial and irrelevant under the issues in the case. If the question could be said to be objectionable for assuming that there was a regular stopping place, no such objection

was interposed. The specific objection that it was not shown that plaintiff stopped at that place on the occasion complained of was not applicable to the question as to what was the regular place to begin to stop for the crossing. There was no error in the ruling of the court. The witness answered, "I should judge about halfway." This answer of the witness is now insisted upon by counsel for appellant, as a basis for the affirmative charge for the defendant, when taken in connection with the testimony of the plaintiff as to what point he first began to stop the car; the insistence being that this evidence clearly and fully establishes the averments of plea 3.

(3) The affirmative charge should never be given where the evidence is open to a reasonable inference of a material fact unfavorable to the right of recovery by the party requesting the charge.—*Carter v. Fulgham,* 134 Ala. 238, 32 South. 684; 5 Mayf. Dig. p. 150. It will be observed that the witness made no effort to fix the regular stopping place with anything approaching mathematical certainty, and the plaintiff in one part of his testimony stated that when "he began to stop it might have been about halfway, or a little before or a little after; he could not say positively." A discussion however, of the evidence would here serve no good purpose. We have carefully considered it, and, in the light of the above well-understood rule, we are convinced that there was no error in the refusal of the court to give the affirmative charge as to either count of the complaint.

The court refused to give to the jury, upon defendant's request, the following written charge: "(4) The court charges the jury that if you believe the evidence in this case, in the event you find for the plaintiff, you cannot award the plaintiff more than nominal damages

for decreased earning capacity on account of the injuries he complains of."

(4) The brief for appellant, filed on original submission, must be taken as conceding that the complaint claimed damages for "decreased earning capacity;" and the charge quoted must be accepted as evincing a like concession by defendant on the trial. Because of these thus evinced deliberate concessions on the part of defendant (appellant), the propriety of the court's action in refusing charge 4 is reviewed upon the premise so made.

(5, 6) This statement is here interposed with the purpose of averting the committal of this court, in any degree, or by any implication, to the proposition that loss of time and decreased or diminished earning capacity, as elements of damages in actions for personal injuries, are synonymous. Such possibly proximately resulting consequences of a personal injury, wrongfully inflicted, are special damages, and must, if recoverable, be specially claimed in the complaint.—*Dowdall v. King,* 97 Ala. 635, 12 South. 405; *Slaughter v. Met. St. Ry. Co.,* 116 Mo. 269; 23 S. W. 760. Here the averments are that plaintiff's "health and physical stamina were greatly and permanently impaired," in consequence of the injury; also, that, because of the injury, he "was rendered for a long time unable to work and earn money." The former allegation unquestionably affirms that he suffered permanent impairment in respect of health and physical stamina. The latter allegation, quoted ante, could only mean that he lost time from his labors; the duration thereof being averred as having been for a long time. Loss of time, in such circumstances, signifies the loss of those earnings which accrue from employing time in labor or business, and in legal parlance imports a materially distinct conception from another

legal phrase, viz., diminished or decreased earning capacity (power)—a distinction that if not taken and observed would, in many cases, lead to the manifestly unjustifiable sanction of a double recovery. On this matter the following authorities may be consulted: *Blue Grass Traction Co. v. Ingles,* 140 Ky. 488, 131 S. W. 278- 283; 3 Words and Phrases, Second Series, p. 187; *Knittel v. Schmidt,* 16 Tex. Civ. App. 7, 40 S. W. 507; *Scholl v. Grayson,* 147 Mo. App. 652, 127 S. W. 415; *Slaughter v. Met. St. Ry. Co.,* 116 Mo. 269, 23 S. W. 760; *Houston Ry. Co. v. Hartnett* (Tex. Civ. App.) 48 S. W. 773, 775; *S. & N. Ala. R. R. Co. v. McLendon,* 63 Ala. 266, second headnote; *A. G. S. R. R. Co. v. Yarbrough,* 83 Ala. 238, 3 South. 447, 3 Am. St. Sep. 715; *M. & O. R. R. Co. v. George,* 94 Ala. 199, 222, 10 Sopth. 145; 13 Cyc. pp. 46-48.

(7-9) Recurring to the question presented by the concessions stated, our opinion is that the trial court erred in refusing the quoted charge. It made expess reference to decreased earning capacity, and would have restricted the recovery therefor to nominal damages.—*B. R., L. & P. Co. v. Friedman,* 187 Ala. 562, 65 South. 939, 941, 942. Here there was evidence tending to show permanent injury, and in consequence thereof impaired future earning capacity. If the jury so found, then the plaintiff was entitled to only nominal damages therefor, unless the evidence afforded data wherefrom compensatory damages for decreased earning capacity might be ascertained. There was no evidence presenting data from which the monetary value of plaintiff's decreased earning capacity could be ascertained. The evidence of the wage earned previous to and at the time of the injury and between the date of the injury and the trial could have no tendency or effect to show the

monetary equivalent of decreased earning capacity proximately resulting, if so found, from the permanent injury suffered. Such evidence may have an effect to show the proximate result of the injury in respect of loss of time by contrasting the amount of earnings before the injury and the diminution thereof, up to the time of trial, because of the temporary inability to labor, etc., wrought by the injury. The law implies some diminished earning capacity from permanent injury; but the monetary value thereof is regarded as nominal, unless the data tending to show the actual value of such diminished earning capacity is furnished. But since the loss of time may not, as in *B. R., L. & P. Co. v. Simpson, infra,* 67 South. 385, and in *Mallette's Case,* 92 Ala. 209, 9 South. 363, result in any damage whatsoever the law does not imply an even nominal loss. The noting of the indicated distinction between loss of time and decreased earning capacity will serve to bring clearly to view the complete harmony between the rulings in the *Simpson Case, supra,* and the *Bush Case,* 175 Ala. 49, 59, 56 South. 731. It has been finally settled in this jurisdiction that, in order to deny to the defendant an affirmative instruction against the awarding of compensatory damages for loss of time or for diminished earning capacity, there must be evidence presenting data wherefrom the monetary value of such proximate consequences of personal injury may be ascertained by the jury.—*S. S. S. & I. Co. v. Stewart,* 172 Ala. 516, 55 South. 785; *Bush's Case, supra.*

(10) It has been suggested that the quoted charge was abstract, and hence that it was refused without error. Treating the complaint as bearing the claim of special damages for diminished earning capacity, and noting the phase of the evidence which tended to show

a permanent injury, it is manifest that the charge was not abstract.

For the error indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded. All the Justices concur.