(113 So. 403)

**BIRMINGHAM ELECTRIC CO. v. CLEVELAND.** (6 Div. 686.)

Supreme Court of Alabama. May 5, 1927.

Rehearing Denied June 23, 1927.

1. **Damages** ⬥159(3)—**Allegation in complaint for injuries, that plaintiff was permanently injured, held to permit recovery for impairment of earning capacity.**

In action for injuries to person attempting to get aboard defendant's street car, complaint charging plaintiff was permanently injured and his nervous system shocked and impaired *held* to imply impairment of earning capacity, permitting recovery for such impairment under proper proof, notwithstanding complaint contained no express allegation that earning capacity had been impaired.

<hr>

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Damages ⚷208(4)—Question of damages for impaired earning capacity of subforeman held for jury, in action against street railroad for injuries alleged to have caused spinal curvature.**

In action against street railroad by subforeman for injuries resulting from attempt to board street car and claimed to have resulted in curvature of spine, impairing ability to work, question of right to damages for impaired earning capacity *held* for jury.

**3. Damages ⚷208(3)—Damages for permanent injury held for jury, in action for injuries to one boarding street car, alleged to have caused spinal curvature.**

In action against street railroad for injuries alleged to have resulted in curvature of spine, of person attempting to board street car, evidence *held* to warrant court's submission to jury of question of damages for permanent injury.

**4. Trial ⚷140(1)—Credibility of evidence is for jury.**

Credibility of evidence given at trial is matter for jury's consideration.

**5. Trial ⚷133(6)—Statement of counsel in opening argument that injured plaintiff had hungry mouths to feed, though improper, held not to warrant reversal, where jury was instructed to disregard statement and motion for mistrial was delayed.**

In action for injuries against street railroad, statement of counsel in opening argument that plaintiff had "a hungry wife and hungry mouths to feed out there," though improper, *held* not ground for reversal, where court sustained objection thereto and instructed jury to disregard statement and no motion for mistrial was made until later.

**6. Appeal and error ⚷1060(1)—Whether counsel's improper argument requires reversal must be determined from facts involved and atmosphere created at trial.**

Question whether judgment should be reversed because of improper argument of counsel must be determined upon consideration of peculiar facts involved and atmosphere created at trial of case.

**7. Trial ⚷133(6)—Remarks by counsel, in action for injuries, as to decreased purchasing power of money and truthfulness of defendant's employee, in view of corrective instruction, held not ground for reversal.**

In action against street railroad for injuries, statements of counsel in argument as to "measly nature of defense," decreased purchasing power of money, and counsel's opinion that conductor was not telling truth because not wanting to lose his job, if constituting error, *held* not ground for reversal, in view of court's action sustaining objections and giving corrective instructions.

**8. Trial ⚷121(2)—Counsel in argument may draw conclusions from evidence, providing they keep within record and do not attempt to prejudice jury unfairly.**

Counsel in argument must be allowed, within limits, to draw their own conclusions and express their arguments, provided they do not travel out of record or make use of unfair means to create prejudice in minds of jury.

**9. Carriers ⚷321(2)—Instruction that plaintiff could not recover unless he was accepted as passenger held properly refused in action for injuries to one boarding street car.**

In action against street railroad for injuries sustained by one attempting to board street car, dragged by car and thrown against iron post, refusal to charge that plaintiff could not recover unless jury believed he was accepted by defendant's agent or servant in charge of car as a passenger *held* not error, as instruction might have misled jury to think formal acceptance was necessary.

**10. Carriers ⚷247(3)—One using reasonable promptness in attempting to board street car at place where it extended invitation to public was entitled to be treated as passenger.**

One, who made reasonable effort to get aboard car of street railroad extending invitation to public to board at place of injury, was entitled to be treated as passenger by street railroad in exercise of reasonable care and diligence to prevent injury.

**11. Carriers ⚷287(1)—Duty of street railroad to persons promptly boarding car at regular stops is absolute.**

Duty of street railroad in operation of car, with respect to persons exercising reasonably prompt effort to get aboard at places where public is invited to board car, is absolute duty resting unequivocally on railroad.

**12. Appeal and error ⚷1033(5) — Appellant cannot complain of instruction more favorable to him than he deserves.**

Appellant cannot complain that instruction more favorable to him than law permitted was erroneous.

**13. Carriers ⚷321(6) — Instruction that street railroad was not under absolute duty to see that no passengers were boarding or attempting to board car before closing gates held properly refused.**

In action against street railroad for injuries sustained by prospective passenger, dragged along when car door closed, refusal of instruction that defendant was not under absolute duty to see that no passengers were boarding before closing gates, but were only under duty to stop car in reasonably sufficient length of time, *held* not error.

**14. Trial ⚷253(4) — Instructions omitting mention of defendant's duty and leaving circumstances creating duty for jury held properly refused in action for injuries.**

In action for injuries to one boarding street car, injured after door of car was closed, dragging him along street, instructions which omitted mention of defendant's duty to know that plaintiff was attempting to board car, or left determination of circumstances under which such duty rested upon defendant to jury, *held* properly refused.

---

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

15. Damages ⚯132(3)—Award of $15,000 to young subforeman, earning $7.90 a day, for injuries claimed to have resulted in spinal curvature held excessive and reduced to $10,-000, under conflicting evidence.

In action for injuries to young subforeman for street railroad, earning $7.90 a day, who claimed injury resulted in curvature of spine, requiring assistance in doing his work and in sciatic sclerosis causing pain, award of $15,000 damages *held* excessive and reduced to $10,000, where evidence was conflicting.

Anderson, C. J., dissenting. Somerville and Gardner, JJ., dissenting in part.

Appeal from Circuit Court, Jefferson County; John Denson, Judge.

Action for damages for personal injuries by D. F. Cleveland against the Birmingham Electric Company. From a judgment for plaintiff for $15,000, defendant appeals. Affirmed conditionally.

The refused charges, made the basis of assignments of error 13, 14, 15, 16, 17, and 20, are as follows:

(13) "If you believe from the evidence that the defendant's said car was stopped for a sufficient length of time for passengers to board same, and the gates of the car were then closed, and the car thereafter started without said agents of the defendant, in charge of said car, knowing or having been charged with the knowledge that injury would probably or likely result to plaintiff as a proximate result of the closing of said gates and the starting of said car, then plaintiff cannot recover in this case."

(14) "Unless you believe from the evidence in this case that defendant's servants or agents in charge of the street car, on the occasion complained of, knew or were chargeable with knowledge that the plaintiff was attempting to get on defendant's said street car, then the plaintiff is not entitled to recover in this case."

(15) "The court charges the jury that the agents of the defendant, on the occasion complained of, were not under the absolute duty to see and know that no passengers were boarding or attempting to board the car before closing the gates and starting the car forward, but they were only under the duty to stop the car a reasonably sufficient length of time for passengers to board same, and if you believe from the evidence that said agents or servants had stopped the car on said occasion a reasonably sufficient length of time for passengers there present to board the said car and thereafter closed the gates of the car and started the car without knowing with exercise of the highest degree of care, skill, and diligence that injury would probably or likely result to plaintiff or to some other person then attempting to board said car, then the plaintiff cannot recover in this case."

(16) "If you believe from the evidence that defendant's servants or agents in charge of defendant's said car, on the occasion complained of, did not have any notice or knowledge that plaintiff was attempting to embark on defendant's said car, then you cannot find for the plaintiff, under count 3 of the complaint as amended."

(17) "If you believe from the evidence that defendant's car, on the occasion complained of, was stopped a reasonably sufficient time for passengers to board the said car, and thereafter the said car was started without the defendant's said agents knowing or being chargeable with knowledge that the starting of said car would probably result in some injury to a passenger then in the act of boarding said car, then plaintiff cannot recover under count 3 of the complaint as amended."

(20) "Unless you believe from the evidence that plaintiff was accepted by the defendant's agent or servant in charge of said car, on the occasion complained of, as a passenger, then he cannot recover in this case."

Bradley, Baldwin, All & White, John S. Coleman, and T. A. McFarland, all of Birmingham, for appellant.

The poverty of one of the parties or the wealth of another is not proper matter of inquiry in an action for damages based on negligence. Barbour County v. Horn, 48 Ala. 566; Vanarsdol v. Farlow, 200 Iowa, 495, 203 N. W. 794; Dallas, etc., Co. v. Black, 40 Tex. Civ. App. 415, 89 S. W. 1087; Jackson Lbr. Co. v. Trammell, 199 Ala. 536, 74 So. 469. Neither retraction by counsel nor the exclusion of the remarks by the court could remove the prejudicial effects of the argument of plaintiff's counsel in this case. Watts v. Espy, 211 Ala. 502, 101 So. 106; Florence Co. v. Field, 104 Ala. 471, 16 So. 538; B. R. L. & P. Co. v. Drennen, 175 Ala. 338, 57 So. 876, Ann. Cas. 1914C, 1037; Metropolitan L. I. Co. v. Carter, 212 Ala. 212, 102 So. 130; Standridge v. Martin, 203 Ala. 486, 84 So. 266; L. & N. v. Glick, 214 Ala. 303, 107 So. 453. Where the verdict is excessive, the court will closely scrutinize the argument and conduct of counsel for the prevailing party. L. & N. v. Glick, supra; Perazzo v. Ortega (Ariz.) 241 P. 518; Dillingham v. Scales, 78 Tex. 205, 14 S. W. 566; Wichita Falls v. Emberlin (Tex. Civ. App.) 274 S. W. 991; N. O. & N. E. v. Jackson, 140 Miss. 375, 105 So. 770; Southern R. Co. v. Grady, 192 Ala. 515, 68 So. 346. The rule requiring an appeal to the court for corrective action does not apply where the remarks are of such character that neither rebuke nor retraction can destroy their sinister influence, and a new trial should be ordered regardless of objection or exception or the lack of either or both. Florence Co. v. Field, supra; B. R. L. & P. Co. v. Gonzalez, 183 Ala. 287, 61 So. 80, Ann. Cas. 1916A, 543; Vogt v. Guidry (Tex. Civ. App.) 229 S. W. 656. A person attempting to board a street car does not become a passenger until he is accepted as such by the carrier. Charge 20 should have been given. A. C. G. & A. v. Bates, 149 Ala. 487, 43 So. 98; 1 Nellis Rys. (2d Ed.) 249; Robertson v. Boston & N. S. Ry. Co., 190 Mass. 108, 76 N. E. 513, 3 L. R.

⚯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

A. (N. S.) 588, 112 Am. St. Rep. 314; 4 R. C. L. 1004. There was no evidence in this case to warrant the submission to the jury of any question involving any impaired earning capacity of the plaintiff. Norwood Hospital v. Jones, 214 Ala. 314, 107 So. 858; Arkansas & L. Ry. Co. v. Sain, 90 Ark. 278, 119 S. W. 659, 22 L. R. A. (N. S.) 910. The jury could not award substantial damages for impaired earning capacity, in the absence of data on which to base such an award, even where the injury is shown to be permanent. Ala. F. & I. Co. v. Ward, 194 Ala. 242, 69 So. 621; U. S. C. I. P. & F. Co. v. Eastham (C. C. A.) 237 F. 185; B. R. L. & P. Co. v. Friedman, 187 Ala. 562, 65 So. 939. The charge made the basis of assignment 15 should have been given. B. R. L. & P. Co. v. Barrett, 179 Ala. 274, 60 So. 262; Montgomery, etc., Co. v. Stewart, 91 Ala. 421, 8 So. 708; H. A. & B. R. Co. v. Burt, 92 Ala. 291, 9 So. 410, 13 L. R. A. 95; Millmore v. Boston Elev. R. Co., 194 Mass. 323, 80 N. E. 445, 11 L. R. A. (N. S.) 140, 120 Am. St. Rep. 558; Raben v. Central Iowa R. Co., 73 Iowa, 579, 35 N. W. 645, 5 Am. St. Rep. 708.

Altman, Taylor & Koenig, of Birmingham, for appellee.

Where an injured person fails to introduce some evidence as to his earning capacity before and after the injury, he may recover nominal damages for loss of earning capacity. Sloss Co. v. Stewart, 172 Ala. 516, 55 So. 785; B. R. L. & P. Co. v. Harden, 156 Ala. 244, 47 So. 327. In this case the question whether plaintiff's injuries were permanent and, if so, how far they would in future affect his earning capacity, was for the jury, and the court properly charged the jury that they might consider any impairment of plaintiff's earning capacity in estimating the damages. B. R. L. & P. Co. v. Bush, 175 Ala. 49, 56 So. 731. The permanence of an injury may be inferred from the time it has continued and its seriousness. 4 Sutherland, Damages (4th Ed.) 4714; Macon R. & L. Co. v. Streyer, 123 Ga. 279, 51 S. E. 342; Southern R. Co. v. Clariday, 124 Ga. 958, 53 S. E. 461; Lewis v. Portland R. L. & P. Co., 59 Or. 314, 117 P. 423; A. G. S. v. Taylor, 196 Ala. 37, 71 So. 676; B. R. L. & P. Co. v. Bush, supra. If argument of counsel was improper, it was remedied by its exclusion. Mobile L. & R. Co. v. Gallasch, 210 Ala. 219, 97 So. 733; Tenn. River Nav. Co. v. Walls, 209 Ala. 320, 96 So. 266; L. & N. v. Cross, 205 Ala. 626, 88 So. 908; A. G. S. v. Grauer, 212 Ala. 197, 102 So. 125; Thames v. L. & N., 208 Ala. 255, 94 So. 487; Louis Pizitz Co. v. Yeldell, 213 Ala. 222, 104 So. 526; L. & N. v. Cunningham Hdwe. Co., 213 Ala. 252, 104 So. 433. The trial court is not in error in refusing a charge which incorrectly states the law or is confusing, though its only fault lies in the fact that it is too favorable to the adverse party. Dunaway v.

Roden, 14 Ala. App. 501, 71 So. 70. Where an invitation is extended by a carrier to take passengers on its car by stopping the car for the purpose, it is the primary duty of the operatives to exercise reasonable care to see that no person in actual process of accepting the invitation is in a position to be injured if the car without warning moved or the entrance closed. The existence of the relationship of passenger or carrier is generally implied from the attendant circumstances. Mobile L. & R. Co. v. Ellis, 209 Ala. 580, 96 So. 773; Sweet v. B. R. & E. Co., 136 Ala. 166, 33 So. 886; H. A. & B. R. Co. v. Burt, 92 Ala. 291, 9 So. 410, 13 L. R. A. 95; A. C. G. & A. v. Bates, 149 Ala. 487, 43 So. 98. A requested instruction submitting a question of law to the jury is properly refused. Chambers v. Morris,[1] 42 So. 549; McEntyre v. Hairston, 152 Ala. 251, 44 So. 417. If the oral charge is misleading, neither party can complain if he fails to request explanatory charges in writing. Clark v. Eufaula Brick Wks., 205 Ala. 545, 88 So. 669; Ala. Power Co. v. Armour & Co., 207 Ala. 15, 92 So. 111.

SAYRE, J. To state the case very briefly, plaintiff's (appellee's) version is that defendant's electric street car stopped at a customary place of stopping where he awaited it to take passage, that he waited until a number of passengers alighted, after which, with reasonable expedition, attempting to get aboard, he reached up and caught some part of the door of the car, whereupon the door was closed, catching his hand, and the car moved ahead, dragging him along until he was thrown against an iron post, causing the various injuries described in count 1 of the complaint. The charge was that this was negligently done. The evidence supported this theory of the case, and the jury returned a verdict accordingly.

[1] The case went to the jury on the third count of the complaint charging simple negligence. That count, for a description of the injuries suffered by plaintiff, referred to and adopted the allegations of count 1. Count 1, among other elements of damage, alleged that plaintiff was "permanently injured and * * * his nervous system was greatly shocked and impaired and permanently shocked and impaired * * * and [he] was made permanently sick and ill." Appellant, defendant, contends that the trial court committed error in that part of its oral charge in which the jury were told that, if plaintiff was entitled to recover, they might assess damages to compensate him for, among other things, "any impairment of his earning capacity." Defendant does not concede that the complaint claimed damages for impaired earning capacity. In this connec-

_____

[1] Reported in full in the Southern Reporter; not reported in full in 149 Ala. 674.

tion we are referred to B. R. L. & P. Co. v. Colbert, 190 Ala. 229, 67 So. 513, and Sloss-Sheffield Co. v. Thomas, 202 Ala. 231, 80 So. 69. The opinion in the first named case was written upon the distinctly stated assumption that the complaint claimed damages for "decreased earning capacity." But a statement was interposed "with the purpose of averting the committal of this court, in any degree, or by any implication, to the proposition that loss of time and decreased or diminished earning capacity, as elements of damages in action for personal injuries, are synonymous." It is now and here freely conceded that there is a substantial difference between "loss of time" and "decreased earning capacity," which must be observed in actions of this kind. But we are unable to agree that Dowdall v. King, 97 Ala. 635, 12 So. 405, or Slaughter v. Met. St. Ry. Co., 116 Mo. 269,[1] cases cited in the Colbert Case, supra, have any relation to the question presented in this case, viz., whether, under an allegation of permanent injury of a sort naturally calculated to impair earning capacity, recovery may be had for decreased earning capacity in the absence of an express statement in the complaint that plaintiff's earning capacity has been impaired. It must be conceded, however, that in Sloss-Sheffield Co. v. Thomas, supra, the opinion in the Colbert Case was cited to the proposition that damages for decreased earning capacity were not recoverable, notwithstanding the complaint in the case then under consideration (Thomas Case) alleged permanent injury, referring, it would seem from the report of the case, to the allegation that plaintiff's "legs were broken, his jawbone broken, and he was otherwise bruised and injured." In Dowdall v. King, supra, Stone, C. J., said:

"The plaintiff is not entitled to be redressed for any more than the wrong charged in the complaint, and such damages as naturally result from such wrongful act or such as are, in legal contemplation, its proximate result. Other damages are what is known in the law as special damages. * * * When it is sought to recover damages of this class, they must be specially averred in the complaint."

Later on in the opinion in the Colbert Case it was said that:

"The law implies some diminished earning capacity from permanent injury."

That statement was too broad, for, evidently, a person may suffer some permanent injury which would not permanently affect his earning capacity, and yet, for such injury, if negligently inflicted, he would be entitled to recover damages in an action properly framed; but, otherwise, it was a correct statement of law. The reason of the matter in question is reflected by the great weight of authority, which is thus stated in 17 C. J. 1015, § 313:

"Where the injury alleged will necessarily render a person less capable of performing his usual business duties in the future, proof of the impairment of his general earning capacity may ordinarily be given under the general allegation of the injury, and damages resulting therefrom, such as the inability to attend to his ordinary business, without a special averment that plaintiff will be unable to earn as much in the future as in the past, or without specially averring the nature of his occupation or employment, although a few courts seem to require a greater strictness and definiteness in the allegation."

Decisions from some 15 different jurisdictions are cited in support of the major proposition of the quoted text. Decisions from the courts of 6 states are cited in support of the rule of "a few courts [which] seem to require a greater strictness," among the latter the Colbert Case, 190 Ala. 229, 67 So. 513, and Dunn v. Gunn, 149 Ala. 583, 42 So. 686, decided by this court, and a case from the Kentucky Court of Appeals, we have noticed above the Colbert Case. As for the case of Dunn v. Gunn, we venture to say that the question of recoverable damages briefly mentioned in that case had relation to damages for lost time—a different sort of damages from such as are assessed for impairment of earning capacity, as the opinion in the Colbert Case very clearly points out. Of the Kentucky case, L. & N. v. Sinclair, 171 Ky. 562, 188 S. W. 648, it will suffice, in connection with our quotation from Dowdall v. King, supra, to note the language of the court as follows:

"The permanent impairment of the power to earn money is an incident to a permanent injury, and is necessarily such."

The court is of opinion that the permanent injuries alleged in the present case imply an impairment of earning capacity, and, upon proper proof, allowed a recovery of damages for such impairment.

[2] The more serious difficulty, under our decisions, is raised by the insistence that the evidence furnished no data for the assessment of such damages in terms of money. Defendant contends that the court erroneously allowed the assessment of such damages. Norwood Hospital v. Jones, 214 Ala. 314, 107 So. 858, is stressed in argument. The ruling in that case was that such damages in the peculiar circumstances there shown were speculative and not recoverable, since loss of earning power was not shown. The circumstances were peculiar. Plaintiff was an infant. He had been injured a few hours after birth. A nurse had left a hot water bottle in contact with his body, and he had suffered a burn which left a scar on his hip and thigh. In the circumstances of that case, plaintiff's earning capacity during minority was immaterial as affecting the measure of recovery, because his earnings would belong to his parent. And it is clear enough on the reported

---

[1] 23 S. W. 760.

facts that a finding of impaired earning capacity afterwards would. have been nothing more substantial than a mere speculation. But it has been held in a number of cases in other jurisdictions that a minor may recover in case of permanent injury compensation for all effects of such injury as will be felt after he becomes of age. 2 Sedgwick on Damages (9th Ed.) § 486b. In Western & Atlantic-R. R. v. Young, 81 Ga. 397, 7 S. E. 912, 12 Am. St. Rep. 320, Bleckley, C. J., stated the court's conclusion thus:

"For a personal injury to a child nine years of age, * * *, the law furnishes no measure of damages other than the enlightened conscience of impartial jurors, guided by all the facts and circumstances of the particular case. Amongst the results of the injury to be considered, are pain and suffering, disfigurement and mutilation of the person, and impaired capacity to pursue the ordinary avocations of life at and after attainment of majority."

In that case the plaintiff had suffered the loss of his right arm. Plaintiff in the present case was a young man, evidently, though his age is not definitely shown by the bill of exceptions. He was a subforeman, working for the defendant railroad in its machine shop or roundhouse. Before the accident he earned $7.90 a day. After he recovered, to some extent, at least, he was paid the same daily wage; but, his testimony, given at the trial some 10 months after the accident, was that he still suffered from his injuries and had to have some assistance in doing his work, which he could not do as efficiently as before nor as continuously from day to day. The testimony of the medical men was in conflict, but that on which plaintiff relied tended to show that some time after the accident he developed a slight curvature of the spine, in addition to the injuries to his flesh and muscles, and for the curvature he still wore a plaster cast which interfered with his work, and had lost about 20 pounds in weight. However, the physician who prescribed the plaster cast said that at the time of the trial plaintiff's spine was straight. He also testified that plaintiff was affected by a sciatic sclerosis, the result of his injury, which caused pain. In the circumstances the court is unable to say that the jury may not have inferred injury impairing plaintiff's earning capacity. Judgments in cases involving injuries of a sort to imply future impairment of earning capacity have been reversed in this court for the refusal to instruct the jury that such assessment must be nominal only—this because the court found no sufficient data for the assessment of such damages. The cases are cited in appellant's brief. But in A. G. S. v. Flinn, 199 Ala. 177, 74 So. 246, B. R. L. & P. Co. v. Bush, 175 Ala. 49, 56 So. 731, L. & N. v. Binion, 107 Ala. 645, 18 So. 75, and M. & O. R. Co. v. George, 94 Ala. 199, 10 So. 145, the court seems to have had in mind a rule substantially to this effect. If plaintiff has suffered permanent injury under circumstances implying liability on the part of defendant, and the jury are reasonably satisfied from the evidence that such permanent injury will cause a loss of earning capacity, the assessment of damages on that account will be left to the fair and enlightened discretion of the jury, subject always to the control of the court. Considering the facts and circumstances of this case from plaintiff's viewpoint, which the jury may very well have accepted, it is not perceived that damages for loss of earning capacity are more speculative than in case of pain and suffering, mutilation, disfigurement, or loss of an organ, for all which juries have in general been allowed to assess damages to the successful plaintiff. South & N. A. R. Co. v. McLendon, 63 Ala. 273; M. & O. R. Co. v. George, 94 Ala. 199, 10 So. 145. The plaintiff in A. G. S. v. Taylor, 196 Ala. 42, 71 So. 676, had been doing the same sort of work as plaintiff in this case. There was evidence that the wages of plaintiff in that case had been reduced, but the future effects of the injuries suffered were no more clearly shown than in this case, if as clearly; there is no statement in the report of the case as to whether the age of the plaintiff was shown, but it is certain that no mortality table was put in evidence, as it might have been, as affording data from which the jury may have ascertained the future duration of impaired earning capacity entailed by the injury. B. R. L. & P. Co. v. Wright, 153 Ala. 107, 44 So. 1037. But plaintiff was before the jury as a witness, as was the plaintiff in the last-cited case, and in that case the court said:

"The failure to offer the mortality tables in evidence does not authorize the conclusion that there was no evidence before the jury from which the jury could form a judgment as to the probable duration of the permanent injury suffered by the plaintiff, if such injury was sustained by him. As is indicated by the reference heretofore made to the presence of the plaintiff before the jury and to the tendencies of the evidence touching the damnifying effect of his injury upon his capacity to work and to earn wages, it cannot be held that there was an entire absence of evidence bearing upon the damnifying effect of his injury, if his injury was found by the jury to be permanent. Mary Lee Coal Co. v. Chambliss, 97 Ala. 171, 175, 11 So. 897."

So in the present case we think, after such consideration as seemed to be made necessary by the confused state of the authorities, that the question of damages for impaired earning capacity was properly submitted to the jury.

[3, 4] The court left it with the jury to award damages for permanent injury. To the proposition that this was error Norwood Hospital v. Jones, supra, is again cited, and in addition two cases from the Kentucky Court of Appeals. This was a question of

fact. Judicial precedents are not of much account in the decision of such questions. We have stated our conclusion that plaintiff's evidence tended to establish permanent injury. The court is still of that opinion. As for the credibility of the evidence given, that was a matter of consideration by the jury.

[5, 6] Counsel for plaintiff, in his opening argument to the jury said:

"That man is injured; he has a hungry wife and hungry mouths to feed out there."

Counsel for defendant objected and moved the court to instruct the jury to disregard the quoted argument. The court sustained the motion, saying to the jury:

"I will sustain the motion, and, gentlemen of the jury, you are instructed by the court that it is not a proper argument; it is no element of damages in this case, and it is improper, and the court· instructs you not to consider that part of the attorney's argument."

There was no motion to enter a mistrial at the time. (That motion was made at a later time when the jury had gone out for lunch.) Counsel for plaintiff apologized and then stated:

"I don't know whether you have a wife and family at home to support or not, and the evidence shows he has a wife then and there, and she had twin babies born to her at the time he was knocked out."

The evidence to that effect went in without objection. But no further objection was interposed at the particular time or to the last-mentioned statement by counsel, and the argument proceeded. On the authority of Florence Cotton Co. v. Field, 104 Ala. 471, 16 So. 538, B. R. L. & P. Co. v. Drennen, 175 Ala. 338, 57 So. 876, Ann. Cas. 1914C, 1037, B. R. L. & P. Co. v. Gonzalez, 183 Ala. 287, 61 So. 80, Ann. Cas. 1916A, 543, Standridge v. Martin, 203 Ala. 486, 84 So. 266, and some other cases in the same line, the argument here is that the judgment should be reversed because of error in overruling defendant's motion for a new trial made on this and similar objections taken against other parts of plaintiff's argument to the jury. L. & N. v. Glick, 214 Ala. 303, 107 So. 453, Watts v. Espy, 211 Ala. 502, 101 So. 106, Alabama Fuel Co. v. Williams, 207 Ala. 99, 91 So. 879, Anderson v. State, 209 Ala. 36, 95 So. 171, Jackson Lumber Co. v. Trammell, 199 Ala. 536, 74 So. 469, and Metropolitan Ins. Co. v. Carter, 212 Ala. 212, 102 So. 130, are also referred to in the brief. Every question of this sort is to be decided upon consideration of the peculiar facts involved and of the atmosphere created in the trial of the cause. The contention now is that the prejudicial effect of the statement by counsel was very probably beyond the reach of the remedy applied by the trial court, and that, notwithstanding the court's instruction, a reversal of the judgment should be ordered. Other objections to remarks of counsel were interposed as follows:

[7] Counsel said:

"Never in my life have I heard of such a measly defense as they are bringing up here. Dr. Beddow comes in here—the company doctor for the B. R. L. & P. Company. This man didn't go up there at our request for Dr. Beddow to examine him. He went up there in distress, trying to get some money to take care of his wife, to take care of his family, take care of him, and his doctor's bills."

To this argument defendant objected, and the court sustained the objection. Whereupon Mr. Taylor, counsel for plaintiff, said:

"I think that was wrong."

Defendant moved the court to enter a mistrial. This the court overruled, saying:

"I will overrule the motion for a mistrial, and I will instruct the jury that line of argument is not proper, that is not evidence in the case, and you are not to consider that in arriving at your verdict, and you must dismiss that from your minds together and not consider it. It has nothing to do with the case and you are to decide it—are to reach your verdict—from the testimony as adduced from the witness stand in the case, and not on improper arguments or things that have been suggested to you by counsel in argument. That is not based on facts in evidence. You must disabuse your minds of any such matters as he has just stated to you in arguing the case to the jury."

Counsel begged to be excused, but afterward continued as follows:

"I want you to consider the facts and give this man a verdict that will compensate him as far as money will compensate him for the injury and suffering he went through and will have to go through to his grave. I think he is injured about as bad as a man can be to live. I don't know how long the man will live. I know he is going down every day. He has to work to earn his living by the sweat of his brow. I don't think there is a man on this jury but what believes that is all this man wants—that he wants what is right. We don't want any small verdict. In this day and time people can't live on the money they once could."

Objection was taken to his remark:

"In this day and time people can't live on the money they once could."

Objection sustained. Motion for a mistrial overruled. Counsel again expressed his sorrow on account of what he said. Thereupon the court said to the jury:

"Gentlemen, the last remarks are improper argument, and you will not give any consideration to them. Your verdict is not to be based on anything except the evidence adduced from the witness stand, and those remarks are improper, and you should not consider them at all in arriving at your verdict."

Defendant again moved for a mistrial, which motion was overruled.

In his closing argument Mr. Taylor said:

"That motorman standing up there—you know how they are. They have a mirror in front of them. They don't have to look to see whether any passengers or [are] getting on or off the car. All this man had to do was to cut his eyes into that mirror, and there was no way in the world for him to miss seeing this man getting on. I don't think he tried to catch this man in there and hurt him. I think he was looking up the street; he wasn't noticing what he was doing. He had his mind on something else. He closed the gate and caught that boy. There was nothing to prevent him looking in that mirror and back down the side of the car, and nothing to prevent him from doing his duty. ⟍

"I don't believe this conductor—I don't believe he was on that car the boy got hurt on. They caught this boy and hurt him, and they are not going to tell the company. Whoever that conductor and motorman are, they are not going to let it be known. I tell you, it is almost too much to ask that they go to their boss man and let it be known. Why? Because they are not going to lose their jobs. They can't whip those cars off down that line any time they get reach and catch a man in there and whip him against a post—they can't do it."

Objection by defendant to that part of the argument, last quoted, that the street car men would not tell anything because they were afraid they would lose their jobs. Overruled. Counsel for plaintiff withdrew the remark and requested the court to instruct the jury not to consider it. The court thereupon said to the jury:

"Gentlemen of the jury, there is no evidence before you that any employee of this defendant company is going to lose his job by any action of his, and any argument based on any such assertion of counsel is improper and should not be considered by you. As I told you before, your verdict is to be based on the evidence as adduced from the witness stand in this case, and not on any argument made by counsel which is not based on facts in the case."

[8] We have been at pains to show all those parts of plaintiff's argument to the jury to which objection was made and what the court said on the subject of each instance. We find no very serious objection to those parts subsequent to the first as being wide departures from the line of legitimate argument. The court cannot too narrowly circumscribe the scope and latitude of argument. Counsel must be allowed, within limits, to draw their own conclusions and to express their arguments in their own way, provided, of course, they do not travel out of the record or make use of unfair means to create prejudice in the minds of the jury. As for one of the objections argued in the brief, this court has taken judicial notice of the decreased purchasing power of money. As for another, counsel had a right to their opinion that the defense was "measly" and to advise the jury of that opinion. If the language employed was not such as to meet the approval of a fastidious taste, that objection goes to the form and not the substance of the argument. So with respect to the statement by counsel:

"I don't believe this conductor. * * * Because they are not going to lose their jobs."

It occurs to us that this was merely to call attention to the natural tendency of employee witnesses to favor their employers as a reason why, in connection with other facts in evidence, the jury might not be bound by the witness' testimony; but, however that may be, with the corrective applied by the court we are unwilling to affirm reversible error at this point. L. & N. v. Cunningham Hdw. Co., 213 Ala. 252, 104 So. 433.

It appears to us clear enough that it was open to the jury to find that plaintiff suffered injury caused by the negligence of defendant's conductor in charge of the car. The main question in the case related to the measure of damages. And the only remark of counsel prejudicially affecting that question was that one which we considered in the first place. The court, responding to the several objections, said as much as it could reasonably be expected to say to the jury in the way of removing any impression these remarks may have made upon them. The motion for a mistrial should have been promptly made; instead, it was delayed until the jury had gone from the court room and the court had proceeded for some time with the trial. And while the same objection, in substance, was available on the motion for a new trial, the trial judge, who witnessed the proceedings, was of opinion that there was no sufficient reason for granting the motion, and we are not prepared to say the court committed reversible error.

[9] The charge which we have marked (20) on the margin of the record stated its proposition in a way calculated to mislead the jury, and we do not find error in its refusal. It was calculated to mislead the jury to think that defendant's acceptance of plaintiff must have been indicated by some formal action on the part of its conductor. What is said in Alabama City, etc., R. R. v. Bates, 149 Ala. 490, 43 So. 98, is true enough, but the opinion in that case does not tell the whole story. This question arose in Mobile Light & R. R. Co. v. Ellis, 209 Ala. 580, 96 So. 773.

[10] Proceeding on principles stated in that case, the jury in this were authorized by the evidence to find that defendant extended an invitation to the public to board its car at the station where plaintiff was injured, that plaintiff made reasonably prompt effort to get aboard, and thereby it became the duty of defendant's agents in charge of the car to exercise reasonable care and diligence to see that no person, in the actual process of accepting such invitation in the usual way, was so related to the car as that, if the door were closed without due notice or in negligent haste, the intending passenger, plaintiff in

this case, would likely be injured, and, on a finding in agreement with the foregoing statement, the jury should have found that to every intent and purpose of this case plaintiff was entitled to be treated as a passenger. In Sweet v. B. R. & E. Co., 136 Ala. 169, 33 So. 886, the court said that defendant, in the circumstances shown by plaintiff's evidence, was under duty to see and know that no passenger was in the act of boarding or alighting from the car or in a position which would be rendered perilous by putting the car in motion, citing Highland Ave. R. R. v. Burt, 92 Ala. 291, 9 So. 410, 13 L. R. A. 95, and other authorities.

[11] The duty of defendant in the operation of its car at the point in question, with respect to persons in the situation of plaintiff—if his theory of the facts was accepted by the jury—was absolute; that is, it was a duty resting unequivocally on defendant. How such duty was to be discharged is another matter. As to that the charge shown by the fifteenth assignment of error was in some confusion. The duty and the decree of care necessary in its discharge were stated to the jury by the court in its oral charge, as follows:

"Now, the law in regard to the conduct of those operating street cars is this. That when a street car stops at a point for the manifest purpose of discharging and taking on passengers, that is, extends an invitation to that end, and it is accepted by persons waiting at said stopping place for the purpose of boarding the car, it is the duty of those in charge of the operation of the street car to exercise reasonable care and diligence to see that no person in the act of accepting such invitation in the usual way and boarding the car is in a position which would be rendered dangerous by moving the car without warning, and to exercise reasonable care and diligence to see that the intending passenger would not likely be injured by denying or obstructing his entry into the car."

[12, 13] This, perhaps, stated the rule as to what degree of care should be exercised by defendant to ascertain the situation of persons about to board the car with some undue favor to defendant, but of that defendant cannot complain. However that may be, this part of the oral charge covered the case, and there was no reversible error in refusing to give a charge which exacted of defendant a higher degree of care.

[14] As for the thirteenth, fourteenth, sixteenth, and seventeenth assignments of error, the charges shown by these assignments to have been refused on defendant's request are argued in solido. They either pretermit mention of defendant's duty to know that plaintiff was attempting to get aboard the car, as was the case in the charge shown by the sixteenth assignment, or they leave it to the jury to say in what circumstances such duty rested upon defendant or its agent, or agents, then and there in charge of the car. The facts were for the jury, certainly, but the law was reserved for statement by the court for the guidance of the jury in ascertaining the legal significance of the facts to be found. These charges failed in that, and there was no error in refusing them.

[15] Appellant also contends that the damages assessed were excessive. As to that the testimony was in conflict. Looking to all the circumstances, the court is of opinion that this contention on the part of appellant is well taken, and that $10,000 will fully compensate appellee for the damage shown, and, accordingly, in pursuance of section 6150 of the Code, will affirm the judgment if appellee within 30 days thereof shall certify to the clerk of this court a remittitur of damages in excess of the said amount; otherwise, the judgment will be reversed.

Affirmed conditionally.

All the Justices concur, except SOMERVILLE, J., who dissents.

On Rehearing.

The application for a rehearing is overruled.

SAYRE, THOMAS, BOULDIN, and BROWN, JJ., concur.

ANDERSON, C. J., dissents, being of opinion that the judgment should be reversed on account of the argument of counsel for appellee (plaintiff).

SOMERVILLE and GARDNER, JJ., dissent on the first three points discussed in the prevailing opinion.