475 So.2d 486 (1985)
Bennie L. BISHOP
v.
Hershel POORE, Jr.
83-1005.
Supreme Court of Alabama.
July 12, 1985.
Rehearing Denied August 23, 1985.
John E. Rochester of Thompson & Rochester, Ashland, for appellant.
G. Coke Williams of Williams, Williams, Norton & Long, Anniston, for appellee.
EMBRY, Justice.
This appeal is from a jury verdict in favor of the plaintiff, Herschel H. Poore, *487 Jr., in the sum of $65,000 against the defendant, Bennie L. Bishop, for personal injury and property damage. The litigation arose out of a collision between defendant's automobile and plaintiff's motorcycle on Alabama Highway 21 in the City of Oxford. Two issues are presented for decision in this appeal.

I
In his complaint, plaintiff alleged that defendant "negligently or wantonly caused" defendant's automobile to collide with plaintiff's motorcycle. The first issue for review is whether the trial court erred in refusing to strike the allegation of wantonness. Defendant contends there was insufficient evidence of wantonness for that issue to go to the jury.
Wantonness is the doing of some act or omission to do some act with reckless indifference to the knowledge that such act or omission will likely or probably result in injury. Gunnells v. Dethrage, 366 So.2d 1104 (Ala.1979). Wantonness may arise from knowledge that persons, though not seen, are likely to be in a position of danger. Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976). Knowledge need not be shown by direct proof. It may be made to appear, like any other fact, by showing circumstances from which the fact of actual knowledge is a legitimate inference. Lankford v. Mong, 283 Ala. 24, 214 So.2d 301 (1968).
In considering the question of the sufficiency of the evidence of wantonness to be submitted to the jury, this court must accept the adduced evidence most favorable to the plaintiff as true, and indulge such reasonable inferences as the jury was free to draw from the evidence. Jackson v. Cook, 275 Ala. 151, 153 So.2d 229 (1963). A wantonness count should go to the jury if there is any evidence to support a finding of wantonness. See Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972).
The evidence most favorable to the plaintiff is the following: On the evening of 11 November 1982, defendant and his family were returning to their home in Lineville from a visit to Quintard Shopping Mall in Oxford. After stopping at a service entrance stop sign connecting the mall with Highway 21, defendant proceeded across the northbound double-lane of the highway to get to the southbound lane of traffic. At the same time, plaintiff was travelling north in the right lane on his motorcycle. The two vehicles collided, causing damage to plaintiff's person and his motorcycle.
The evidence adduced at trial showed the accident occurred at a dangerous intersection, with no traffic controls to guide a driver's judgment. The evidence also showed that, although the accident occurred after nightfall, the highway was well-lit by mercury vapor lights and there were no obstructions to visibility. In addition, plaintiff's motorcycle projected a normal beam from its headlight, which should have been visible to the defendant.
Under these circumstances, the evidence that defendant never looked in the direction of the plaintiff arguably provided some evidence of wanton conduct on the part of the defendant. His failure to look could be regarded as reckless indifference to the knowledge that such omission would likely result in injury to another. Some evidence of wantonness was all that was necessary for the issue to go to the jury. Therefore, no error was committed by the trial court in overruling the motion to strike.

II
The second issue for review is whether the trial court erred in permitting plaintiff to testify as to loss of earning capacity where plaintiff was not actually working nor receiving wages at the time of the accident.
Plaintiff claimed that as a proximate result of the defendant's negligence or wantonness he was disabled from his employment and would be unable to perform in his chosen line of work in the future. He requested compensation for loss of earning capacity as one element of his claim of *488 damages. Defendant asserted this loss could only be speculative in nature because plaintiff was not actually working at the time of his injury. He argued that presentation to the jury of evidence regarding loss of earning capacity would be improper. His objection at trial to the admissibility of this evidence was overruled.
A complaint alleging permanent injury is sufficient to imply impairment of earning capacity. Birmingham Electric Co. v. Cleveland, 216 Ala. 455, 113 So. 403 (1927). Evidence of average earnings is admissible as affording a basis for the estimate of damages in such cases. Allison v. Acton-Etheridge Coal Co., 289 Ala. 443, 268 So.2d 725 (1972).
Plaintiff alleged permanent injury in his complaint, and produced evidence to support such injury. He also presented specific data detailing his usual past earnings. In light of this evidence, we cannot say the jury was without guide in awarding damages in this case. Therefore, we find no error by the trial court with regard to its ruling as to the admissibility of the evidence.
For the stated reasons, the judgment below is due to be, and it is hereby, affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., dissents.
TORBERT, Chief Justice (dissenting).
I must respectfully dissent on two grounds. First, there is not a scintilla of evidence supporting the allegation of wantonness. Second, the damages issue concerns loss of earnings, not loss of earning capacity.
There is nothing in the evidence tending to show that the defendant was guilty of wanton conduct. The evidence in dispute is over whether the defendant looked in the direction of the oncoming plaintiff or not. This was enough to submit the issue of negligence to the jury, but this could not support a finding of wantonness. "Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the result." Roberts v. Brown, 384 So.2d 1047, 1048 (Ala.1980) (emphasis added). I cannot see how a failure to look in the direction of an oncoming motorcycle can amount to a conscious and intentional omission so as to be wanton conduct. In fact, this Court has held that where a woman failed to look in her rearview mirror, veered her car to the left and then turned it to the right without giving the proper signals and thereby turned into the path of a motorcycle following her and caused a collision, she could not be found guilty of wantonness, because she had not been shown to have had knowledge of the presence of the motorcycle. Graves v. Wildsmith, 278 Ala. 228, 177 So.2d 448 (1965). In the present case, the trial court should have directed a verdict for defendant on the claim of wantonness.
As to the issue of measuring damages, the majority discusses loss of earning capacity, when the issue in question is loss of earnings and the trial court never gave the jury instructions for the awarding of damages for loss of earning capacity. The trial court instructed the jury on how to measure loss of earnings. The defendant contends that there can be no award for loss of earnings when the plaintiff was unemployed at the time of the accident, and the plaintiff contends that there can be such an award because at the time the accident occurred he was anticipating employment.
There was no evidence presented as to the plaintiff's loss of earning capacity. There was no evidence concerning plaintiff's future earning capacity, nor was there any evidence showing that the plaintiff even had a permanent injury. Plaintiff's doctor testified only that permanent impairment was a possibility. What this Court recently set forth in Carnival Cruise Lines, Inc. v. Snoddy, 457 So.2d 379 (Ala.1984), is appropriate in this case:

*489 "It is this element of individual variation that precludes the universal inference of diminished earning capacity merely from evidence of physical disability, and nothing more. A jury, left to flounder without some evidence of a causal connection between the physical impairment and the reduced earning capacity, and without an evidentiary predicate upon which to assess the actual degree of impairment in earning capacity, engages in pure speculation and conjecture. Unlike an assessment of damages for pain and suffering or mental anguish, the correlation of physical disability with impaired earning capacity cannot be said, in every case, to fall within the purview of the average person's common understanding and experience. Except in extreme and obvious cases, some direct evidence of the existence and extent of impaired earning capacity is necessary as the foundation upon which the jury may make an informed assessment of damages. See Norwood Hospital v. Jones, 214 Ala. 314, 107 So. 858 (1926); United States Cast Iron Pipe and Foundry Co. v. Eastham, 237 F. 185 (5th Cir.1916) (applying Alabama law); Alabama Pattern Jury Instructions: Civil, Damages §§ 11.10, 11.11.
"...
A rule that would permit the inference of diminished earning capacity from the fact of permanent injury alone is far too narrow, for surely `a person may suffer some permanent injury which would not permanently affect his earning capacity.' Birmingham Electric Co. v. Cleveland, supra, 216 Ala. at 459, 113 So. at 405. For a case not permitting the jury to consider loss of earning capacity as an element of damages, based merely on the nature and extent of the injury, see Norwood Hospital v. Jones, supra, 214 Ala. at 316, 107 So. at 860."
457 So.2d at 382-83. The plaintiff's testimony that he used to make about $500.00 a week provided no means for the jury to correlate the physical disability with impaired earning capacity. Without any evidence as to the plaintiff's degree of impairment or life expectancy, any award for loss of earning capacity would be based on pure speculation.
The majority opinion never touches the issue of loss of earnings; instead, the majority upholds the jury's award on grounds that the jury was never instructed on. This Court needs to address the issue of loss of earnings in determining whether there was any evidence supporting the jury's award.